## A99A0015. GRANT v. THE STATE.
(515 SE2d 872)

SMITH, Judge.

Charles Jerome Grant was found guilty by a jury on one count of robbery by sudden snatching. His motion for new trial, as amended, was denied, and he appeals. Finding no error, we affirm.

1. Grant filed a motion to set aside and vacate his conviction in the trial court because the record did not show that the jury had been

sworn. In support of this motion, he attached the court reporter's affidavit, which recited that the reporter had listened to the tape of the proceedings and found no recording of the jury's being sworn after selection to serve on Grant's case. The trial court denied the motion.

It is well settled that "a conviction by an unsworn jury is a mere nullity." *Slaughter v. State*, 100 Ga. 323, 330 (28 SE 159) (1897). See also *Culpepper v. State*, 132 Ga. App. 733 (2) (209 SE2d 18) (1974). But the fact that the record does not show that the jury was sworn is not reversible error. "The courts of this State have consistently held that the failure of the record to reflect whether the jury is sworn does not constitute reversible error. [Cits.]" *Stokes v. State*, 206 Ga. App. 781 (1) (426 SE2d 573) (1992). It must appear affirmatively that the jury was not sworn. If an appellant claims that the jury was not sworn, his or her remedy is to have the record corrected by following the provisions of OCGA § 5-6-41 (f). *Montford v. State*, 148 Ga. App. 335 (2) (251 SE2d 125) (1978). See also *Smith v. State*, 235 Ga. 852, 853 (3) (221 SE2d 601) (1976); *Copeland v. State*, 139 Ga. App. 55, 57 (2) (227 SE2d 850) (1976). Grant failed in this regard and cannot now claim error.

2. Grant argues that evidence of a similar transaction was erroneously admitted, because his conviction on the charge of robbery by sudden snatching arising out of that transaction was reversed on appeal.

Construed to support the jury's verdict, evidence was presented at trial that Grant and three other men entered a package store in Peach County where the victim was working. The victim was standing behind the counter when Grant asked her about an unusual brand of wine. The victim began to leave the counter to assist the men in finding that wine but sensed that "something wasn't right" and moved back toward the counter. Grant then told her to move from behind the counter. The victim complied, Grant "nodded his head," and two of the other men ran behind the counter, took money out of a money box, and ran outside, leaving Grant and one other man, identified as "J.B.," inside the store. An ice cream vendor arrived in his truck outside the store, and Grant told J. B. to "go take care of him and I'll finish her." J. B. walked to the truck and asked for directions from the vendor. A short time later, the victim, apparently while calling the police on her cordless telephone, ran outside toward the ice cream truck, with Grant behind her. She told the vendor, Jordan, that she had just been robbed. Jordan had seen the first two men, as well as J. B., walk around the side of the building. On the scene, Grant claimed he did not know those men.

Following a Uniform Superior Court Rule 31.3 hearing, the trial court permitted the State to present evidence of a similar transaction. Evidence was presented that approximately six weeks before

the incident in this case, Grant and three other men entered a convenience store in Baldwin County. Grant diverted the clerk's attention by having her help him find batteries, and then one of the other men asked her about cigars, further diverting the clerk away from the store's office. The store manager testified that while she was in the office preparing the bank deposit, Grant asked her the way to the restroom. A short time later, she was called into the store area to talk with a man about a "help wanted" sign. After laying her bank bag on the desk and walking into the store area to talk with this man, she noticed him "looking at something," became suspicious, walked into her office, and discovered that money she had placed in the bank bag was missing. She then ran outside and saw three of the four men driving away, leaving one suspect behind. After the trial of the present case, Grant was convicted on the charge of robbery by sudden snatching in the Baldwin County case. That conviction, however, was reversed on appeal. *Grant v. State*, 226 Ga. App. 506 (486 SE2d 717) (1997).

Grant argues that because his conviction for the similar crime was reversed, evidence of that crime was inadmissible in the earlier trial of the charge in this case. We do not agree. Evidence of similar transactions may be admitted if the State affirmatively shows (1) that the evidence serves an appropriate purpose; (2) the accused committed the other offense; and (3) a sufficient connection between the similar offense and the offense for which the accused is being tried "such that proof of the former tends to prove the latter. [Cit.]" *Howard v. State*, 220 Ga. App. 267, 269 (469 SE2d 396) (1996). The trial court admitted evidence of the Baldwin County incident for the purpose of showing identity and Grant's modus operandi, clearly appropriate purposes for the admission of similar transaction evidence. *Luke v. State*, 222 Ga. App. 203, 207 (474 SE2d 49) (1996). The victims of the Baldwin County incident unequivocally testified that Grant participated in the incident, and the relatively short time period between the incidents as well as their similarities unquestionably shows a connection between the two offenses such that proof of the Baldwin County offense proved commission of the Peach County offense. "The connecting thread pervading the two offenses is a corresponding course of conduct and intent or bent of mind which is sufficient to justify the admission of the similar transaction evidence." *Howard*, supra at 269.

Evidence of the Baldwin County incident was therefore clearly admissible as a similar transaction, and the fact that Grant's conviction in the Baldwin County incident was reversed does not require reversal here. It is well-settled that a prior offense need not result in a conviction to be admissible as a similar transaction. See, e.g., *Howard*, supra at 269. It follows that a reversal of a conviction need not

necessarily render the facts underlying the conviction inadmissible as a similar transaction.

The Baldwin County case was reversed on a very narrow ground: the State's failure to show that the victim was aware, at the time of the theft, that anything was being taken, as required by OCGA § 16-8-40. *Grant*, supra at 507. No question was raised in that appeal concerning Grant's identity or the method he used to commit the crime. Also, this is not a case in which the issues of Grant's intent or identity as the perpetrator were resolved in his favor by a prior acquittal, which would have barred introduction of evidence concerning those issues. See *Salcedo v. State*, 258 Ga. 870 (376 SE2d 360) (1989); *Lucas v. State*, 178 Ga. App. 150 (342 SE2d 377) (1986). It is true that the prior incident differed from the one for which Grant was tried in Peach County, in that the victims in the Baldwin County trial did not know, contemporaneously with the theft, that money was being taken from the store. But a prior transaction need not be identical to the one being prosecuted to be admissible. See, e.g., *Woolfolk v. State*, 202 Ga. App. 59, 61 (4) (413 SE2d 242) (1991).

The similarities between the prior incident and the present case are inescapable; within a relatively short period of time, Grant and three other men walked into two stores and stole money from both stores while diverting or attempting to divert the attention of store employees. And in each case, one man was left behind by the other three. We find no error in the admission of the similar transaction evidence.

3. Grant argues that he was denied effective assistance of counsel, basing this contention on several aspects of trial counsel's performance. To prevail on a claim of ineffectiveness of counsel, an appellant must show that counsel's performance was deficient and that this deficient performance prejudiced his defense. See, e.g., *Elrod v. State*, 222 Ga. App. 704, 707 (3) (475 SE2d 710) (1996). We find neither deficient performance by trial counsel nor prejudice to Grant's defense.

Grant contends that his trial counsel failed to meet with him often enough and failed to discuss the similar transaction evidence with him. We find no merit in these claims. Although Grant disagreed, trial counsel testified during the hearing on Grant's motion for new trial that he met with Grant four times before trial for approximately 45 minutes each visit. Defense counsel also met with the State's counsel to discuss the case, copied the State's file, discussed the case with Grant, and traveled to a parole hearing in another county to obtain information concerning the similar transaction evidence. The amount of time defense counsel spent with Grant "is not determinative of whether counsel rendered ineffective assistance." (Citations and punctuation omitted.) Id. at 708. After review-

ing trial counsel's testimony concerning his trial preparation, "[w]e fail to see a reasonable probability that but for counsel's failure to discuss the case further with [Grant], the trial's outcome would have been different." Id.

Grant also argues, as he did during the hearing on his motion for new trial, that his counsel failed to communicate the State's plea offer to him. But trial counsel testified unequivocally that he did communicate this offer. The issue of witness credibility was a matter within the trial court's discretion. See, e.g., *Randolph v. State*, 225 Ga. App. 324 (484 SE2d 1) (1997). The trial court was thus authorized to believe the testimony of trial counsel over that of Grant.

We find no merit in Grant's claim that trial counsel inadequately cross-examined the victim. Counsel testified that he attempted to show, during cross-examination, inconsistencies between the victim's direct testimony and her written statement but that he did not wish to speak in a harsh tone because this "extremely credible" witness also was "frail." Trial counsel's method of cross-examining the victim was clearly a matter of trial strategy, which did "not equate with ineffective assistance of counsel." (Citations and punctuation omitted.) *Brown v. State*, 225 Ga. App. 49, 50 (1) (a) (483 SE2d 318) (1997). We have examined Grant's remaining arguments concerning his ineffectiveness claim and find them to be without merit. The trial court did not err in denying Grant's motion for new trial.

*Judgment affirmed. Pope, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED APRIL 8, 1999 —
RECONSIDERATION DENIED MAY 5, 1999 — 

*L. Elizabeth Lane*, for appellant.
*Charles H. Weston, District Attorney, Wayne G. Tillis, Howard Z. Simms, Assistant District Attorneys*, for appellee.