## S00A1114. RUCKER v. THE STATE.
### (534 SE2d 71)

HINES, Justice.

Derrick Rucker was found guilty of malice murder, felony murder, kidnapping with bodily injury, aggravated assault, conspiracy to commit armed robbery, burglary, two counts of false imprisonment, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon in connection with the fatal shooting of Reuben Jackson. He challenges his convictions and the denial of his motion for new trial on the bases that the trial court erred by not allowing into evidence a co-defendant's polygraph test results and that the evidence was insufficient to support the verdicts of guilt. But the challenge is without merit and we affirm.[1]

The evidence construed in favor of the verdicts showed that Rucker and three friends, Lackey, Fortson, and Williams, traveled in a van to Covington in search of drugs and money. Lackey thought that Jackson might have drugs, so the group went to Jackson's house. Jackson claimed that he did not have any drugs, and the group left. Later, the men decided that Jackson had lied, and they talked about

---

[1] The crimes occurred on November 29, 1996. During the July Term, 1997, a Newton County grand jury indicted Rucker for malice murder; felony murder while in the commission of conspiracy to commit armed robbery, and aggravated assault; kidnapping with bodily injury; aggravated assault; conspiracy to commit armed robbery; burglary; two counts of false imprisonment; possession of a firearm during the commission of a felony; and possession of a firearm by a convicted felon. Rucker was also charged with possession of a firearm by a convicted felon on December 4, 1996, the day he was apprehended, but it was represented that an order of nolle prosequi would be entered on the charge. Rucker was tried before a jury July 21-25, 1997, and found guilty on all counts. On July 31, 1997, Rucker was sentenced as a recidivist pursuant to OCGA § 17-10-7 (c); he was given life imprisonment for malice murder; a consecutive life sentence for kidnapping with bodily injury; a consecutive ten-year sentence for conspiracy to commit armed robbery; a consecutive twenty-year sentence for burglary; a consecutive ten-year sentence for each of the two counts of false imprisonment; a consecutive five-year sentence for possession of a firearm during the commission of a felony; and a consecutive five-year sentence for possession of a firearm by a convicted felon. The court treated the aggravated assault as merged and the felony murder stood vacated by operation of law. A motion for new trial was filed on August 25, 1997, amended on November 3, 1998, and denied on January 15, 1999. A notice of appeal was filed on February 12, 1999, and the appeal was docketed in this Court on March 23, 2000. The case was submitted for decision on May 15, 2000.

robbing him. They returned to Jackson's home. The men donned gloves and Rucker took a pistol from the van and placed it in the waistband of his pants. Rucker and Lackey approached Jackson, asking for the pager number of another drug dealer. Rucker pulled Jackson into his house, and Fortson and Williams followed them inside. Lackey returned to the vehicle.

Rucker pointed a pistol at Jackson, who was lying face down on the living room floor. At Rucker's direction, Fortson went to a back room where he held Jackson's aunt at gunpoint. Rucker stood over Jackson and ordered him not to look at him. Rucker then directed Williams to find something with which to tie up Jackson. After ransacking the house trying to find things of value as well, Williams returned with a belt and a telephone cord. Rucker bound Jackson's feet and hands and then ordered Williams to bring him an iron. Rucker told Jackson "for the last time" to call another drug dealer; Jackson said that he would but that it was unlikely the dealer would call back. Rucker asked Williams for the iron. Jackson said, "You ain't fixing to put no iron on me, you're just going to have to kill me." Rucker responded, "S__t, have it your way." He then shot Jackson in the head. When Fortson asked why, Rucker stated, "S__t happens." Rucker told Lackey and Williams that he had killed Jackson.

Rucker's van was seen coming and going from Jackson's house. There was evidence that Rucker and the others had taken items from Jackson's person and from his house; Jackson's pants pockets were turned inside out or ripped loose and jewelry was missing from the house. After Rucker's arrest, the murder weapon was found on the front passenger seat of his vehicle, and Jackson's blood was found on the pistol. When arrested, Rucker was wearing two pairs of pants; the front waistband of one pair contained a mixture of Rucker's blood and Jackson's blood.

In the second portion of the bifurcated trial, the State introduced a certified copy of Rucker's prior convictions.

1. Rucker contends that the trial court erred in granting the State's motion in limine to exclude evidence of the results of a polygraph test taken by Antonio Lackey because such results were relevant to Rucker's defense that he did not participate in the killing. But, there was no evidence of a stipulation as to the admissibility of the polygraph results in Lackey's case much less at Rucker's trial, and a stipulation is a prerequisite to admissibility. *Robertson v. State*, 268 Ga. 772, 779 (21) (493 SE2d 697) (1997); *Forehand v. State*, 267 Ga. 254, 256 (5) (477 SE2d 560) (1996).

Rucker urges that an exception should be made to the requirement of a stipulation because "Georgia law has made distinctions with regard to evidence which tends to prove a defendant's sole defense," citing *Walker v. State*, 260 Ga. 737 (399 SE2d 199) (1991). It

is true that in *Walker*, this Court found it reversible error for the lower court to grant the State's motion in limine to exclude evidence allegedly implicating another individual, Burks, in the crimes at issue, and that the lower court, because of its ruling on the motion in limine, erroneously quashed a subpoena seeking, inter alia, the results of a polygraph taken by Burks. However, this Court clearly stated that the materials sought by subpoena, including the polygraph results, might be "inadmissible for other reasons." Id. at 739 (2). And subsequently, in the appeal of Walker's convictions after retrial, this Court unequivocally concluded that evidence of Burks's polygraph test results was inadmissible at Walker's trial because there was no stipulation between the State and Walker to admit the evidence. *Walker v. State*, 264 Ga. 79 (2) (440 SE2d 637) (1994). This was so even though "there was a stipulation between the State and Burks to use the test results at [Burks's] trial." Id. at 80 (2).

2. Rucker's contention that the evidence was legally insufficient because of witness Lackey's inconsistent statements and resulting lack of credibility fails as well. The jury determines the credibility of witnesses, so the truthfulness of those witnesses, including that of Lackey, was for the jury to decide. *Bush v. State*, 267 Ga. 877, 878 (485 SE2d 466) (1997); *Brannon v. State*, 266 Ga. 667, 668 (469 SE2d 676) (1996). The evidence presented at trial was sufficient to authorize a rational trier of fact to find Rucker guilty beyond a reasonable doubt of the offenses for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 11, 2000.

*Boyce, Ekonomou & Atkinson, Michael G. Lambros, Paul E. Nystrom III*, for appellant.

*Alan A. Cook, District Attorney, Thurbert E. Baker, Attorney General, Adam M. Hames, Assistant Attorney General*, for appellee.