S01P0284. BUTTS v. THE STATE.

(546 SE2d 472)

SEARS, Justice.

A jury found Robert Earl Butts, Jr., guilty of malice murder, felony murder, armed robbery, hijacking a motor vehicle, possession of a firearm during the commission of a crime, and possession of a

sawed-off shotgun.[1] The jury fixed the sentence for the malice murder at death, after finding beyond a reasonable doubt that the murder was committed during the commission of the capital felony of armed robbery. For the reasons that follow, we affirm.

1. The evidence adduced at trial showed that on the night of March 28, 1996, Butts and Marion Wilson, Jr., drove in Butts's automobile to a local Wal-Mart store and began searching for a victim. Butts entered the store wearing a coat, under which he likely concealed the murder weapon. A witness observed Butts and Wilson standing behind Donovan Corey Parks in a checkout line. The cashier for that checkout line also remembered Butts being in her line. The store's receipts showed that Butts purchased a pack of chewing gum immediately after Parks made his purchase of pet supplies.

A witness overheard Butts asking Parks for a ride. After Parks moved items in his automobile to make room for Butts and Wilson, Butts sat in the front passenger seat and Wilson sat in the back seat behind Parks. According to a witness to whom Butts confessed, Butts revealed the shotgun a short distance away, and Parks was ordered to stop the automobile. Wilson dragged Parks out of the automobile by his tie and ordered him to lie facedown on the pavement. Butts then fired one fatal shot to the back of Parks's head with the shotgun. Witnesses nearby heard the shot, believing it to be a backfiring vehicle.

After murdering Parks, Butts and Wilson drove to a service station in Gray, Georgia, where they refueled Parks's automobile and where Wilson was filmed by the service station's security camera. Butts and Wilson then drove to Atlanta in an unsuccessful attempt

---

[1] This is the companion case to *Wilson v. State*, 271 Ga. 811 (525 SE2d 339) (1999) (affirming death sentence of co-perpetrator). The crimes occurred on March 28, 1996. Butts was indicted by a Baldwin County grand jury on May 29, 1996, for malice murder, felony murder, armed robbery, hijacking a motor vehicle, possession of a firearm during the commission of a crime, and possession of a sawed-off shotgun. On July 22, 1996, the State filed written notice of its intent to seek the death penalty. Butts's trial began on November 10, 1998. The jury found him guilty on all counts on November 20, 1998, and fixed the sentence for the malice murder at death on November 21, 1998, finding beyond a reasonable doubt that the murder was committed during the commission of the capital felony of armed robbery. The felony murder conviction was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993); OCGA § 16-1-7 (a) (1). In an order filed on November 21, 1998, the trial court imposed a death sentence for the malice murder and the following consecutive terms of imprisonment: life for armed robbery; ten years for hijacking a motor vehicle; five years for possession of a firearm during the commission of a crime; and five years for possession of a sawed-off shotgun. The trial court denied Butts's motion for a new trial in an order filed on August 18, 1999. A notice of appeal was filed on August 23, 1999; however, on February 25, 2000, the case was stricken from this Court's docket and remanded for an evidentiary hearing. Butts's renewed motion for a new trial was denied in an order filed on October 4, 2000, and a second notice of appeal was filed on October 26, 2000. This appeal was docketed in this Court on November 3, 2000, and orally argued on February 12, 2001.

to exchange Parks's automobile for money at a "chop shop." The pair purchased two cans of gasoline, drove to a remote location in Macon, Georgia, and set fire to Parks's automobile. They then walked to a nearby public phone, where Butts called his uncle and arranged a ride for himself and Wilson back to the Wal-Mart to retrieve Butts's automobile.

Investigators had recorded the license plate numbers of the vehicles parked in the Wal-Mart parking lot on the night of the murder, and Butts's automobile was among them. A shotgun loaded with an uncommon type of ammunition was found under Wilson's bed during a search, and a witness testified that Butts had given the weapon to Wilson to hold temporarily. Two of Butts's former jail mates testified that he had admitted to being the triggerman in the murder.

2. We find that, viewed in the light most favorable to the verdicts, the evidence presented at trial was sufficient to authorize the jury to find beyond a reasonable doubt that Butts was guilty of all charges and that the one statutory aggravating circumstance existed.[2] We apply the same standard to also conclude that the trial court did not err in denying Butts's motion for a directed verdict.[3]

### Pretrial Issues

3. Butts argues that the trial judge should have recused herself simply because she had previously presided over juvenile proceedings against Butts; Butts further argues that his trial counsel rendered ineffective assistance by failing to request the trial judge's recusal. We disagree with both arguments.

We find that the issue of the trial judge's alleged error for failing to recuse herself is waived because Butts and his trial counsel failed to raise the issue at or before trial.[4]

Because Butts also claims that his trial counsel rendered ineffective assistance in waiving the issue of recusal by failing to raise it at trial, we directly address the merits of the issue of the trial judge's alleged need for recusal. "In order to be disqualifying [an] alleged [judicial] bias 'must stem from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 17-10-30 (b) (2).

[3] *Miller v. State*, 270 Ga. 741, 742 (1) (512 SE2d 272) (1999); *Smith v. State*, 267 Ga. 502, 503-504 (3) (480 SE2d 838) (1997).

[4] *Pope v. State*, 257 Ga. 32, 34-35 (2) (a) (354 SE2d 429) (1987) (citing *United States v. Slay*, 714 F2d 1093 (11th Cir. 1983)); see Rule 25.1, Uniform Rules for the Superior Courts; see also *Kurtz v. State*, 233 Ga. App. 186, 187-188 (3) (504 SE2d 51) (1998) (noting that the issue of the alleged personal bias of a trial judge must be preserved for appeal).

learned from his [or her] participation in the case.' "[5] Although the definition of an "extra-judicial source" arguably includes previous judicial proceedings against a defendant, "[i]t has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant."[6] We find nothing in the record or transcript here, including the transcript of the hearing held on ineffective assistance claims, that suggests that the trial judge's previous official contact with Butts affected the impartiality of her judgments or created a perception of impropriety.[7] Because the issue of the trial judge's alleged disqualification was meritless, Butts can show neither the deficient performance of his trial counsel nor prejudice, both of which are required in order to show ineffective assistance under constitutional standards.[8] Furthermore, counsel testified that they made a strategic decision not to file a motion to recuse because they perceived the trial judge to be the most desirable among the judges available to serve, a decision we find to have been professionally reasonable.[9]

### Jury Selection

4. Butts contends that the trial court erred in finding juror Donnelly qualified to serve. The State suggested in its oral arguments before this Court that juror Donnelly was qualified only after a full panel of 42 prospective jurors had been qualified, but the transcript appears to contradict that suggestion. However, our own review of the transcript reveals that the trial court later excused this juror after the State, "out of an abundance of caution," urged that the juror be excused and the defense concurred. Because it appears that Butts's suggestion that the juror was ultimately found qualified to serve is false, we find no error.

5. Butts argues that juror Osborne should have been excused for cause because he was serving as City Marshal and had formerly

---

[5] *Carter v. State*, 246 Ga. 328, 329 (271 SE2d 475) (1980) (quoting *United States v. Grinnell Corp.*, 384 U. S. 563, 583 (86 SC 1698, 16 LE2d 778) (1966)).

[6] *Liteky v. United States*, 510 U. S. 540, 551 (II) (114 SC 1147, 127 LE2d 474) (1994) (applying federal statutory law); see also *Welch v. State*, 257 Ga. 197, 200 (8) (357 SE2d 70) (1987) (holding recusal not required where trial judge presided over original trial wherein defendant was sentenced to death).

[7] See Canon 3 (E) (1), Georgia Code of Judicial Conduct; see also *Savage v. Savage*, 234 Ga. 853, 856 (218 SE2d 568) (1975) ("[W]here bias or prejudice of a judge has been shown concerning a party, it is error for the judge to hear and decide the case."); *Stephens v. Stephens*, 249 Ga. 700, 701 (2) (292 SE2d 689) (1982) (holding that the Code of Judicial Conduct provides a "broader rule of disqualification" than does OCGA § 15-1-8).

[8] *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985).

[9] Id.; see also *Kelly v. State*, 267 Ga. 252-254 (2) (477 SE2d 110) (1996) (holding strategic decision not to file a certain motion to be reasonable).

served as Chief of Police. Although we have held that actively-serving full-time police officers with arrest powers must be excused upon request in a criminal trial, we have refused to extend that automatic disqualification rule to other persons who are less-connected with law enforcement.[10] Juror Osborne indicated that he was no longer serving as Chief of Police and that his duties as City Marshal concerned "building code [and] other miscellaneous" matters. He explained that, although he believed he possessed arrest powers, he was not involved in criminal matters. The trial court properly found that this juror was not automatically disqualified, and Butts has failed to show that the juror should have been disqualified for favor.

6. Butts contends that, because the victim had been an employee of the Department of Corrections, all persons who were employed by the Department of Corrections or who were related to such persons should have been disqualified as potential jurors. However, correctional officers are not subject to the automatic disqualification rule of *Hutcheson v. State*,[11] and "[b]lanket disqualification of jurors based solely upon their membership in a group to which the victim belonged is not required."[12]

7. The trial court denied Butts's motion for a change of venue at the conclusion of voir dire, commenting, "I really didn't hear anybody know much about [the case]. . . ." A change of venue was not required simply because a large number of persons in the county were employed by the Department of Corrections.[13] "A capital defendant seeking a change of venue must show that the trial setting was inherently prejudicial as a result of pretrial publicity or show actual bias on the part of the individual jurors."[14] We find, upon our review of the record and transcript, that neither showing was made and, accordingly, that the trial court did not abuse its discretion in deny-

---

[10] See *Hutcheson v. State*, 246 Ga. 13, 14 (1) (268 SE2d 643) (1980); but see *Floyd v. State*, 272 Ga. 65, 67 (2) (525 SE2d 683) (2000) (federal prosecutor not automatically disqualified); *Mosher v. State*, 268 Ga. 555, 557 (2) (491 SE2d 348) (1997) (law enforcement firearms instructor without arrest power not automatically disqualified); *Todd v. State*, 261 Ga. 766, 771 (5) (410 SE2d 725) (1991) (driver's license examiner employed by the Department of Public Safety not automatically disqualified); *Denison v. State*, 258 Ga. 690, 691-692 (4) (373 SE2d 503) (1988) (part-time police officers not automatically disqualified); *Cargill v. State*, 255 Ga. 616, 625-626 (6) (340 SE2d 891) (1986) (drill sergeant who had served as a military police officer and was to serve in that position again upon completion of his tour of duty not automatically disqualified); *Wilson v. State*, 250 Ga. 630, 635-636 (4) (a) (300 SE2d 640) (1983) (reserve police officers not automatically disqualified).

[11] *Hutcheson*, 246 Ga. at 14 (1).

[12] *Wilson*, 271 Ga. at 816-817 (5) (d); see *Davis v. State*, 255 Ga. 598, 601 (3) (340 SE2d 869) (1986); *Jordan v. State*, 247 Ga. 328, 338-340 (6) (276 SE2d 224) (1981); see also *Kent v. State*, 179 Ga. App. 131-132 (345 SE2d 669) (1986).

[13] *Wilson*, 271 Ga. at 821-822 (19).

[14] *Gissendaner v. State*, 272 Ga. 704, 706-707 (2) (532 SE2d 677) (2000); see *Jones v. State*, 261 Ga. 665, 666 (2) (409 SE2d 642) (1991).

ing Butts's motion.[15]

8. Trial counsel testified in the evidentiary hearing held on remand that he made a strategic decision not to question potential jurors about their views on gangs because he intended to focus attention on Butts's co-perpetrator as a gang member and because he thought drawing premature attention to the issue of gangs would have been counterproductive. This strategic decision was reasonable and, accordingly, Butts's claim that his trial counsel rendered ineffective assistance in making that decision fails.[16]

### Guilt/Innocence Phase

9. Pretermitting the question of waiver raised by trial counsel's failure to raise an objection to certain photographs of the victim's wounds, we find that the photographs, the originals of which appear in the record of Butts's co-perpetrator's trial, were admissible.[17] We also find that, because the photographs were admissible, trial counsel did not render ineffective assistance by failing to raise meritless objections to them.[18]

10. The trial court did not err by refusing to suppress a tape-recorded statement given by Butts after his arrest. According to testimony heard by the trial court, Butts was informed of his rights under Miranda v. Arizona[19] at the scene of his arrest. The tape recording of Butts's statement shows that Butts was again informed of his Miranda rights just before he made the statement in question. Also on the recording were Butts's statements that he was able to read and write, that he was not intoxicated, that he understood his rights, and that he was making his statement voluntarily. There is nothing in the transcript to suggest that he ever sought to terminate his interview or requested the presence of an attorney. Although investigators made harsh statements about Butts's situation to him,[20] we agree with the trial court that his statement was voluntary, even under the requirements of OCGA § 24-3-50.[21]

---

[15] Tolver v. State, 269 Ga. 530, 532-533 (4) (500 SE2d 563) (1998) (recognizing trial court's discretion in considering a motion for a change of venue).

[16] Strickland, 466 U. S. at 687 (III); Smith, 253 Ga. at 783 (1); see Mize v. State, 269 Ga. 646, 654-655 (11) (501 SE2d 219) (1998).

[17] Wilson, 271 Ga. at 819 (15) (citing Jackson v. State, 270 Ga. 494, 498 (8) (512 SE2d 241) (1999)); Jenkins v. State, 269 Ga. 282, 293 (20) (498 SE2d 502) (1998); Crozier v. State, 263 Ga. 866, 867 (2) (440 SE2d 635) (1994).

[18] Strickland, 466 U. S. at 687 (III); Smith, 253 Ga. at 783 (1).

[19] Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[20] The State's brief filed with this Court suggests that all of the relevant portions of Butts's statements were made before these harsh statements were made by investigators. Our review of the transcript reveals this suggestion to be false.

[21] Martin v. State, 271 Ga. 301, 304-305 (2) (518 SE2d 898) (1999); but see also Walsh v. State, 269 Ga. 427, 429-430 (1) (499 SE2d 332) (1998) (noting that under OCGA § 24-3-50 a

11. The trial court instructed the jury not to read the newspaper and not to watch anything on television related to Butts's case. Butts cannot now complain that the jurors should have been instructed not to watch any television at all, because he failed to request such an instruction at trial.[22] Furthermore, because there is no evidence that any of the jurors watched any television programs that might have affected their decision making, Butts cannot show the prejudice necessary to support a claim that his trial counsel rendered ineffective assistance in failing to make such a request.[23]

12. The trial court did not err by denying Butts's motion to bar prejudicial security measures after ruling that only four bailiffs would be present and after informing Butts that he could raise the issue again if security became excessive, and Butts has shown nothing to suggest that the trial court's instructions were not followed.[24] Although not necessary to our holding here, we also note that the trial court's instructions suggested that only two of the four bailiffs to be present in the courtroom would be in uniform, although four uniformed officers would be with the jury at night.

13. The trial court did not err by denying Butts's prospective motion to exclude uniformed law enforcement and Department of Corrections officers from the courtroom. The trial court informed Butts that it would be vigilant for any excessive or orchestrated presence of persons in uniform, and Butts has failed to show that any such danger ever materialized.[25]

14. Butts contends that the trial court erred by refusing, without first holding a hearing on the reliability of polygraph science, his request to introduce during the guilt/innocence phase the results of a polygraph of his co-perpetrator. Butts argues that the trial court was required to hold such a hearing under the rationale of *Harper v. State*.[26] This argument is flawed in that it ignores that the scientific methodology in question in *Harper* had not yet been ruled upon by the courts of this State. Polygraph evidence, absent the stipulation of the parties, has been consistently and recently held inadmissible in Georgia courts.[27] Butts's reliance on *Harper* is further flawed in that

---

"confession" is a statement that "acknowledges all of the essential elements of the crime").

[22] *Peppers v. State*, 261 Ga. 338, 340-341 (4) (404 SE2d 788) (1991).

[23] *Strickland*, 466 U. S. at 687 (III); *Smith*, 253 Ga. at 783 (1).

[24] See *Holbrook v. Flynn*, 475 U. S. 560 (106 SC 1340, 89 LE2d 525) (1986) (holding that the presence of four uniformed officers was not so inherently prejudicial as to deny the defendant a fair trial); *Spivey v. State*, 253 Ga. 187, 203-204 (12) (319 SE2d 420) (1984); *Allen v. State*, 235 Ga. 709, 711-712 (221 SE2d 405) (1975).

[25] *Roach v. State*, 221 Ga. 783, 786 (4) (147 SE2d 299) (1966) ("The burden is on him who asserts error to show it affirmatively by the record.").

[26] *Harper v. State*, 249 Ga. 519, 523-526 (1) (292 SE2d 389) (1982).

[27] *Rucker v. State*, 272 Ga. 750, 751-752 (1) (534 SE2d 71) (2000); *Sustakovitch v. State*, 249 Ga. 273, 275 (2) (290 SE2d 77) (1982).

it ignores our explicit authorization of trial courts to "base [their] determination [of the reliability of a given scientific methodology] on exhibits, treatises[,] or the rationale of cases in other jurisdictions."[28] This Court's decisions regarding polygraph science, upon which the trial court relied, have held polygraph results inadmissible because they are unreliable.[29] We find that the trial court did not err by concluding that the case law and arguments presented by Butts in his motion were insufficient to require a departure from settled Georgia law or to require additional evidentiary hearings.

15. We have held that, even in the guilt/innocence phase of a death penalty trial,

> some facts about the victims, including, possibly, some of their personal characteristics, will inevitably be developed, not only because the jurors must be provided "those details of context that allow them to understand what is being described," *Payne* [*v. Tennessee*, 501 U. S. 808, 841 (111 SC 2597, 2617, 115 LE2d 720) (1991)] (Souter, J., concurring), but also because evidence relating to the victims' character and personality may be probative of critical aspects of the trial. . . .[30]

Here, the incidental characterizations of the victim as a nice and charitable person and as being a person who attended services at a religious establishment were relevant to the facts of the crime. The victim offered a ride to persons pretending to be in need, and the victim was identified, in part, by the semi-formal clothing he was wearing after a religious service. Likewise, the victim's father's statement in response to a question by the State about how the victim's remains were identified was an incidental outgrowth of the relevant fact that the father had, in an extraordinary and tragic turn of events, discovered his own son's body moments after the murder. Pretermitting the waiver involved in the fact that most of the contested testimony and comments were not objected to, we find that they were not improper.[31]

Because the testimony and comments complained of by Butts were not improper in their context, Butts's trial counsel did not render ineffective assistance in failing to object to them.[32]

16. Counsel did not render ineffective assistance by expressing

---

[28] *Harper*, 249 Ga. at 525 (1).

[29] Compare *Chambers v. Mississippi*, 410 U. S. 284 (93 SC 1038, 35 LE2d 297) (1973) (addressing failure of Mississippi procedural rules to permit evidence with "persuasive assurances of trustworthiness").

[30] *Sermons v. State*, 262 Ga. 286, 288 (1) (417 SE2d 144) (1992).

[31] See *Wilson*, 271 Ga. at 819-820 (16) (a).

[32] *Strickland*, 466 U. S. at 687 (III); *Smith*, 253 Ga. at 783 (1).

his respect for and friendship with opposing counsel.[33] As counsel explained in his testimony given in the hearing held on remand, his statements were strategic in nature and were contrasted by vigorous statements of disagreement and disapproval at points in the trial where a different tone was deemed appropriate.[34]

17. Butts has failed to show that he suffered any prejudice as the result of his trial counsel's failure to raise more objections to leading questions, and, accordingly, his argument that counsel thereby rendered ineffective assistance fails.[35]

18. Pretermitting the issue of waiver involved in Butts's failure to request a charge on mere presence, we conclude that, because "[t]he trial court's charge, as actually given, was full and fair and substantially covered all the legal principles relevant to the determination of appellant's guilt[,]" the trial court's failure to charge specifically on mere presence was not reversible error.[36]

Because we find that the trial court's charge was adequate as given, Butts cannot show that his trial counsel's failure to request a charge on mere presence and to reserve objections to the trial court's charges as given created prejudice of constitutional proportions; accordingly, his claim that his counsel rendered ineffective assistance with regard to the disputed charge fails.[37]

## Sentencing Phase

19. Butts contends that evidence about the Folks gang and gangs in general was irrelevant to the issues in the sentencing phase of his trial and that presentation of the evidence violated his freedom of speech and his freedom of association under the Constitution of the United States. The evidence in question suggested that Butts was involved with the Folks gang and that the gang required acts of violence for promotion within its ranks. We conclude that, because the "violent nature of that gang was relevant to the issues to be decided by the jury during the sentencing phase of [Butts's] trial," the contested evidence was not an invitation for the jury to punish Butts based upon his exercise of constitutional rights and, accordingly, that the evidence was admissible.[38] Finally, although we find no error, we

---

[33] Id.

[34] See *Grant v. State*, 237 Ga. App. 892, 896 (3) (515 SE2d 872) (1999) (noting strategic aspect of selecting appropriate "tone" during trial), rev'd on other grounds by *Grant v. State*, 272 Ga. 213 (528 SE2d 512) (2000).

[35] *Strickland*, 466 U. S. at 687 (III); *Smith*, 253 Ga. at 783 (1).

[36] *Walton v. State*, 272 Ga. 73, 74-75 (4) (526 SE2d 333) (2000) (citing *Muhammad v. State*, 243 Ga. 404, 405 (1) (254 SE2d 356) (1979)).

[37] *Strickland*, 466 U. S. at 687 (III); *Smith*, 253 Ga. at 783 (1).

[38] *Wilson*, 271 Ga. at 813-814 (2); compare *Dawson v. Delaware*, 503 U. S. 159 (112 SC 1093, 117 LE2d 309) (1992).

also note that Butts has waived this issue by failing to object at trial.[39]

Because the evidence about the Folks gang and gangs in general was not improper, Butts's trial counsel did not render ineffective assistance by failing to object to it.[40]

20. Butts argues that an investigator gave testimony during the sentencing phase of Butts's trial about gangs that would have been improperly perceived by the jury as being expert testimony. This issue is waived because Butts raised no objection at trial.[41] Furthermore, we find nothing improper in the testimony, as it appears from the transcript that the witness would have qualified easily as an expert on gangs.[42]

21. Evidence showing that while incarcerated Butts had set a fire, had fought with another inmate, and had "O.G. [Original Gangster] Butts" written on his shoes was not objected to during the sentencing phase of Butts's trial and, therefore, cannot be complained of now on appeal.[43] Furthermore, we note that the evidence was not improper.[44]

Because the evidence complained of here was not improper, Butts's trial counsel did not render ineffective assistance by failing to object to it.[45]

22. Butts failed to object during the sentencing phase of his trial to the evidence of crimes he committed as a juvenile, and, therefore, he cannot complain now on appeal.[46] We note, however, that such evidence is not improper.[47]

23. The trial court did not err by refusing to permit Butts to present evidence to the jury during the sentencing phase of his trial about execution by electrocution.[48]

24. Butts's trial counsel testified in a hearing held on remand that they contacted Butts's family members in the hope that some of them would testify on Butts's behalf during the sentencing phase. Counsel testified that Butts's mother refused to testify. Counsel fur-

---

[39] *Earnest v. State*, 262 Ga. 494-495 (1) (422 SE2d 188) (1992).

[40] *Strickland*, 466 U. S. at 687 (III); *Smith*, 253 Ga. at 783 (1).

[41] Id.

[42] See *Brown v. State*, 245 Ga. 588, 589-590 (1) (266 SE2d 198) (1980); *Bowden v. State*, 239 Ga. 821, 826 (3) (238 SE2d 905) (1977).

[43] *Earnest*, 262 Ga. at 494-495 (1).

[44] See *Sears v. State*, 270 Ga. 834, 842 (5) (514 SE2d 426) (1999); *Fair v. State*, 245 Ga. 868, 873-874 (4) (268 SE2d 316) (1980).

[45] *Strickland*, 466 U. S. at 687 (III); *Smith*, 253 Ga. at 783 (1).

[46] *Earnest*, 262 Ga. at 494-495 (1).

[47] *Wilson*, 271 Ga. at 822 (20); *Burrell v. State*, 258 Ga. 841, 844 (7) (376 SE2d 184) (1989); OCGA § 15-11-79.1.

[48] *Smith v. State*, 270 Ga. 240, 250-251 (16) (510 SE2d 1) (1998).

ther testified that, although they refused to testify even when counsel "begged them" to do so, Butts's grandmother and aunt had assisted them in preparing for trial. Counsel testified that "outside of [Butts's] aunt and grandma, there was nobody that could say a kind word about him." In light of this testimony and the absence of evidence to the contrary, we conclude that Butts's trial counsel did not render ineffective assistance.[49]

25. Butts contends that his lead counsel rendered ineffective assistance during his sentencing phase closing argument by informing the jury that he had been appointed by the trial court as Butts's counsel and that co-counsel had never before participated in a capital trial. We conclude that counsel's effort through these comments to apologize for any perceived deficiencies in counsel's conduct of Butts's defense was a reasonable exercise of professional judgment.[50]

We also conclude that Butts's trial counsel did not render ineffective assistance by informing the jury that he believed the jury would easily find that Butts had committed the murder during the commission of an armed robbery. Because the jury had just found Butts guilty of armed robbery beyond a reasonable doubt in the guilt/innocence phase, it was reasonable for counsel to concede that point and to argue for a sentence less than death based on other factors.[51]

26. Within the context of the sentencing phase charges as a whole, the trial court's charge that the jury should let its "verdict" reflect any finding it might make regarding a statutory aggravating factor would not have misled the jury as to its duties or the law.[52]

27. The trial court's failure to re-charge the jury on the credibility of witnesses during the sentencing phase was not reversible error.[53]

28. The trial court did not err by failing to charge the jury on how it should weigh non-statutory aggravating circumstances. Instead, the court properly charged the jurors that they were authorized to impose a sentence less than death for any reason or no reason at all.

29. The trial court did not err in failing to charge the jury that its findings regarding mitigating circumstances need not be unanimous. The trial court, instead, properly charged the jury that it could

---

[49] *Strickland*, 466 U. S. at 687 (III); *Smith*, 253 Ga. at 783 (1); see *Gibson v. Turpin*, 270 Ga. 855, 865 (2) (513 SE2d 186) (1999) (considering claim of ineffective assistance where family members refused to testify).

[50] *Strickland*, 466 U. S. at 687 (III); *Smith*, 253 Ga. at 783 (1).

[51] Id.

[52] See *Palmer v. State*, 271 Ga. 234, 238 (6) (517 SE2d 502) (1999) (evaluating a challenged sentencing phase jury charge in light of the charge as a whole).

[53] *Wilson*, 271 Ga. at 818 (9).

impose a sentence less than death for any reason or for no reason at all.[54]

30. Because he has failed to show any reversible error in the trial court's charges to the jury, Butts cannot show the prejudice necessary to support his claim that his counsel rendered ineffective assistance in failing to reserve objections to the charges.[55]

### Sentence Review

31. Butts's counsel argued orally before this Court that execution by electrocution is cruel and unusual punishment. Because Butts's trial counsel failed to obtain a ruling from the trial court on this issue, it is waived for purposes of appeal.[56] Furthermore, counsel may not add enumerations of error by way of oral argument.[57]

32. Upon our review of the record and transcript, we find that the sentence of death in this case was not imposed under the influence of passion, prejudice, or any other arbitrary factor.[58]

33. Butts argues that his death sentence is disproportionate punishment for his crimes. We disagree.

Although the trial judge's report indicates that the evidence did not "foreclose all doubt" in this case, we note that the evidence supporting the jury's finding of guilt was very strong. The fact that Butts asked the victim for a ride, even though he had driven his own automobile to the store, shows that he was involved in the motor vehicle hijacking from the beginning. The evidence also suggested that Butts carried the shotgun with him into the store as he sought out a victim. Testimony at trial showed that Butts had worked with the victim previously, suggesting that Butts intended from the beginning to murder the victim in order to ensure the victim's silence.[59] Several of Butts's former jail mates testified that he had admitted being the triggerman. Evidence presented during the sentencing phase showed that Butts had a history of criminal conduct. These circumstances all might reasonably have urged the jury to impose a death sentence.[60]

Our proportionality review "includes special consideration of the

---

[54] *Wilson,* 271 Ga. at 818 (11); *Sears,* 270 Ga. at 844 (7) (e) (i).

[55] *Strickland,* 466 U. S. at 687 (III); *Smith,* 253 Ga. at 783 (1).

[56] See *Pruitt v. State,* 258 Ga. 583, 587 (7) (373 SE2d 192) (1988); *Kitchens v. State,* 228 Ga. 624, 625 (1) (187 SE2d 268) (1972).

[57] See Supreme Court Rule 22; *Felix v. State,* 271 Ga. 534, 539 (523 SE2d 1) (1999) ("The appellate court is precluded from reviewing the propriety of a lower court's ruling if the ruling is not contained in the enumeration of errors.").

[58] OCGA § 17-10-35 (c) (1).

[59] See *King v. State,* 273 Ga. 258, 277 (43) (539 SE2d 783) (2000).

[60] See *Ross v. State,* 233 Ga. 361, 366-367 (2) (211 SE2d 356) (1974) ("It is the reaction of the sentencer to the evidence before it which concerns this court and which defines the limits which sentencers in past cases have tolerated. . . .").

sentences received by co-defendants in the same crime."[61] In this regard, we note that Butts's co-perpetrator, Marion Wilson, Jr., also has received a death sentence.

We find, considering both the crime and the defendant, that the death sentence imposed in this case is neither excessive nor disproportionate to the penalties imposed in similar cases in Georgia.[62] The cases appearing in the Appendix support this conclusion in that each involves an intentional killing committed during the commission of an armed robbery or a motor vehicle hijacking.

*Judgment affirmed. All the Justices concur.*

APPENDIX.

*King v. State*, 273 Ga. 258 (539 SE2d 783) (2000); *Esposito v. State*, 273 Ga. 183 (538 SE2d 55) (2000); *Wilson v. State*, 271 Ga. 811 (525 SE2d 339) (1999); *Lee v. State*, 270 Ga. 798 (514 SE2d 1) (1999); *Whatley v. State*, 270 Ga. 296 (509 SE2d 45) (1998); *Bishop v. State*, 268 Ga. 286 (486 SE2d 887) (1997); *Jones v. State*, 267 Ga. 592 (481 SE2d 821) (1997); *Carr v. State*, 267 Ga. 547 (480 SE2d 583) (1997); *McClain v. State*, 267 Ga. 378 (477 SE2d 814) (1996); *Green v. State*, 266 Ga. 439 (469 SE2d 129) (1996); *Crowe v. State*, 265 Ga. 582 (458 SE2d 799) (1995); *Mobley v. State*, 265 Ga. 292 (455 SE2d 61) (1995); *Christenson v. State*, 262 Ga. 638 (423 SE2d 252) (1992); *Meders v. State*, 261 Ga. 806 (411 SE2d 491) (1992); *Ferrell v. State*, 261 Ga. 115 (401 SE2d 741) (1991); *Stripling v. State*, 261 Ga. 1 (401 SE2d 500) (1991); *Cargill v. State*, 255 Ga. 616 (340 SE2d 891) (1986); *Ingram v. State*, 253 Ga. 622 (323 SE2d 801) (1984).

BENHAM, Chief Justice, concurring.

Appellant, by contending that his counsel was ineffective because he showed respect for and friendship with opposing counsel, raises an interesting question: is civility incompatible with advocacy? The main opinion rightly resolves this enumeration of error by holding that it is professionally reasonable for civility to be a part of a lawyer's strategic plan in the trial of a case. Being in total agreement with the main opinion, I write separately to further explain the role of civility.

The practice of law is an honorable profession that requires a high standard of conduct of its members. It is a high calling where competence, civility, community service, and public service are integral parts of the professional standards. It is not a profession where

---

[61] *Allen v. State*, 253 Ga. 390, 395-396 (8) (321 SE2d 710) (1984) (citing *Hall v. State*, 241 Ga. 252, 258-260 (8) (244 SE2d 833) (1978)).

[62] OCGA § 17-10-35 (c) (3).

disrespectful, discourteous, and impolite conduct should be nurtured and encouraged. Such conduct should be alien to any honorable profession.

Those who hold themselves out as lawyers should realize that they help shape and mold public opinion as to the role of the law and their role as lawyers. The law sets standards for society and lawyers serve as problem solvers when conflicts arise. To fulfill their responsibility as problem solvers, lawyers must exhibit a high degree of respect for each other, for the court system, and for the public. By doing so, lawyers help to enhance respect for and trust in our legal system. These notions of respect and trust are critical to the proper functioning of the legal process.

While serving as advocates for their clients, lawyers are not required to abandon notions of civility. Quite the contrary, civility, which incorporates respect, courtesy, politeness, graciousness, and basic good manners, is an essential part of effective advocacy. Professionalism's main building block is civility and it sets the truly accomplished lawyer apart from the ordinary lawyer.

Civility is more than good manners. It is an essential ingredient in an effective adversarial legal system such as ours. The absence of civility would produce a system of justice that would be out of control and impossible to manage: normal disputes would be unnecessarily laced with anger and discord; citizens would become disrespectful of the rights of others; corporations would become irresponsible in conducting their business; governments would become unresponsive to the needs of those they serve; and alternative dispute resolution would be virtually impossible.

To avoid incivility's evil consequences of discord, disrespect, unresponsiveness, irresponsibility, and blind advocacy, we must encourage lawyers to embrace civility's positive aspects. Civility allows us to understand another's point of view. It keeps us from giving vent to our emotions. It allows us to understand the consequences of our actions. It permits us to seek alternatives in the resolution of our problems. All of these positive consequences of civility will help us usher in an era where problems are solved fairly, inexpensively, swiftly, and harmoniously. The public expects no less and we must rise to the occasion in meeting those expectations.

DECIDED APRIL 30, 2001.

*Green B. Moore III, Christopher D. Huskins*, for appellant.
*Fredric D. Bright, District Attorney, Stephen A. Bradley, Assistant District Attorney, Thurbert E. Baker, Attorney General, Susan V.*

*Boleyn, Senior Assistant Attorney General, Karen A. Johnson, Assistant Attorney General*, for appellee.