A02A0544. WILLIAMS v. THE STATE.
(564 SE2d 518)

RUFFIN, Judge.

A jury found Franklin Williams guilty of possessing cocaine with intent to distribute, possessing marijuana with intent to distribute, and selling marijuana. Williams moved for a new trial, raising, among other things, ineffective assistance of trial counsel. Following a hearing, the trial court denied the motion. Williams now appeals, challenging the sufficiency of the evidence, asserting that the indictment was procedurally flawed, and again claiming ineffective assistance of counsel. For reasons that follow, we affirm.

1. On appeal, we do not weigh the evidence or determine witness credibility.[1] Rather, "we review the evidence presented at trial in the light most favorable to support the jury's verdict and determine whether this evidence [was] sufficient to authorize a rational trier of fact to find [Williams] guilty of each element of the charged offenses beyond a reasonable doubt."[2] Viewed in this light, the record shows that on November 13, 1996, the Southeast Georgia Drug Task Force conducted an undercover narcotics operation in Ware County. As part of that operation, undercover officer Jason Dupont purchased 16 grams of marijuana at a home on Barnar Lane from an individual introduced to him as "Frank." At trial, Dupont identified Williams as the "Frank" who sold him the marijuana.

[8] See id.
[9] Id.
[1] See *Kier v. State*, 247 Ga. App. 431 (1) (543 SE2d 801) (2000).
[2] Id. at 431-432 (1).

The police did not arrest Williams following the marijuana sale. Instead, on February 5, 1997, police executed a search warrant at the same Barnar Lane home. During the search, Officer John Bloodworth entered a bedroom and saw Williams and Dewitt Cates standing around a table. Bloodworth testified that, when he walked into the room, Cates was holding several small plastic bags, while Williams stuffed what was later identified as marijuana into the bags. Bloodworth handcuffed both men and discovered three vials containing twenty-nine rocks of crack cocaine in Cates' pocket. Police also found four sets of hemostats and additional small plastic bags on the table, as well as two razor blades and inositol powder on a chest of drawers in the bedroom.

Craig Pittman, the narcotics agent in charge of the search, testified that persons involved in the narcotics trade use hemostats to hold and trim marijuana, inositol to "cut" powder cocaine, small plastic bags to package cocaine and marijuana, and razor blades to slice crack cocaine into small pieces for sale. Based on his training and seven and one-half years of narcotics experience, Pittman further testified that possession of twenty-nine pieces of crack cocaine is consistent with an intent to distribute the cocaine. Bloodworth similarly testified, based on his experience and training, that the amount of cocaine seized from Cates was consistent with distribution.

Cates testified at trial that the cocaine police found on him actually belonged to Williams, who had asked Cates to sell it for him. Cates admitted that he had stated under oath at two prior proceedings that the cocaine belonged to him. According to Pittman, however, Cates asserted on the day of the search that he was holding the cocaine for Williams.

Williams also testified. He stated that he did not live at the Barnar Lane house, but was a frequent visitor and often conducted business there, helping people with tax, Social Security, and workers' compensation matters. He denied any involvement with the drugs found in the house on February 5, 1997, and also denied selling marijuana to Dupont on November 13, 1996. According to Williams, when the police searched the house on February 5, 1997, he was reviewing Cates' income tax return. Pittman, however, did not recall seeing any tax forms in the area where police found Williams.

(a) *Possession of Cocaine with Intent to Distribute.* Williams argues that the State presented insufficient evidence to link him to the cocaine seized from Cates. We disagree.

Cates testified that the cocaine belonged to Williams and that Williams asked Cates to sell it for him. As Williams correctly points out, a conviction may not be based solely on the uncorroborated testi-

mony of an accomplice.[3] But "slight evidence of [Williams'] identity and participation from an extraneous source is all that is required to corroborate the accomplice's testimony, and thus, support the verdict."[4] Circumstantial evidence may provide this corroboration.[5]

When police executed the search warrant on February 5, 1997, Bloodworth saw Cates and Williams packaging marijuana into small plastic bags in a bedroom. On a dresser in that same room, officers discovered razors used in the drug trade to prepare crack cocaine for sale, a powder cocaine cutting agent, and numerous small plastic bags commonly used to package both marijuana and cocaine. The evidence further showed that Williams had sold marijuana out of the Barnar Lane house before.

From this evidence, the jury could conclude that Williams was involved in the drug trade and was packaging drugs in a room containing paraphernalia commonly used to prepare both cocaine and marijuana for sale. Although the independent evidence connecting Williams to the cocaine was slight, we find it sufficiently corroborated Cates' testimony that the cocaine seized from his pockets belonged to Williams. Furthermore, Pittman's and Bloodworth's testimony that the amount of seized cocaine was consistent with distribution corroborated Cates' statement that Williams intended the cocaine for sale.

Williams notes that Cates' trial testimony conflicted with two prior statements he made under oath. The jury, however, "determines the credibility of witnesses, so the truthfulness of those witnesses, including that of [Cates], was for the jury to decide."[6] In this case, the jury obviously resolved the conflicts in the evidence against Williams. And, construed favorably to the verdict, the evidence authorized the jury to conclude that Williams had the power and intent to exercise control over the cocaine in Cates' actual possession, giving Williams constructive possession of it.[7] Finally, the jury could find beyond a reasonable doubt that Williams possessed that cocaine with the intent to distribute it.[8]

(b) *Possession of Marijuana with Intent to Distribute.* In his appellate brief, Williams admits that the State presented sufficient

[3] See *Leonard v. State*, 241 Ga. App. 899, 900 (528 SE2d 540) (2000).

[4] (Punctuation omitted.) Id.

[5] See id.

[6] *Rucker v. State*, 272 Ga. 750, 752 (2) (534 SE2d 71) (2000).

[7] See *McDade v. State*, 251 Ga. App. 671, 672 (555 SE2d 43) (2001) ("Proving joint constructive possession requires only a showing that the defendant had the power and intent to exercise control over the contraband.").

[8] See *Cooper v. State*, 237 Ga. App. 837, 838-839 (2) (517 SE2d 85) (1999); *Morgan v. State*, 230 Ga. App. 608, 609 (1) (496 SE2d 924) (1998); *Bacon v. State*, 225 Ga. App. 326, 327-328 (483 SE2d 894) (1997) (physical precedent only).

evidence to sustain his conviction for possession of marijuana with intent to distribute. Accordingly, he has abandoned any challenge to the sufficiency of the evidence on that charge.[9]

(c) *Sale of Marijuana.* The State also presented sufficient evidence to support Williams' conviction for sale of marijuana. Officer Dupont testified that he purchased what was later identified as 16 grams of marijuana from Williams. Dupont's testimony, including his in-court identification of Williams as the seller, authorized the jury's verdict.[10]

2. The record shows that the defense, rather than the State, called Cates as a witness at trial. Williams now asserts that his trial counsel was ineffective in calling Cates, who testified that the cocaine seized from him belonged to Williams, thus obliterating Williams' defense. To succeed in this claim, Williams must show that counsel's performance was deficient and that the deficient performance prejudiced him.[11]

At the hearing on Williams' new trial motion, trial counsel testified that in two proceedings before trial, Cates stated under oath that the cocaine belonged to him, not Williams. Given this testimony, trial counsel determined that Cates was a crucial defense witness, and Williams also believed that Cates should be subpoenaed to testify at trial. In fact, trial counsel thought it would be malpractice *not* to call Cates because he had previously given evidence that might exculpate Williams.

Cates agreed to testify on Williams' behalf. One to two hours before Cates testified, trial counsel spoke with Cates, who gave counsel no reason to believe that his trial testimony would differ from that given in the two prior proceedings. At trial, however, Cates presented a different story, which shocked and surprised trial counsel.

A trial court's conclusion that the defendant received effective assistance of counsel will be upheld unless it is clearly erroneous.[12] We find no clear error here. As we have previously held, "[t]he decisions on which witnesses to call, what objections to make, and what defenses to pursue are strategic choices that, when made after thorough investigation, are virtually unchallengeable."[13] Trial counsel

---

[9] See Court of Appeals Rule 27 (c) (2).

[10] See *Day v. State,* 235 Ga. App. 771, 772 (1) (510 SE2d 579) (1998); *Ivory v. State,* 234 Ga. App. 858, 859 (1) (508 SE2d 421) (1998).

[11] See *Thigpen v. State,* 248 Ga. App. 301 (546 SE2d 60) (2001).

[12] See id.

[13] *Welch v. State,* 243 Ga. App. 798, 800 (2) (534 SE2d 471) (2000). See also *Thigpen,* supra at 302 (b) ("[D]ecisions regarding which witnesses to call and all other trial strategies are the exclusive province of the attorney after consultation with his client.") (punctuation omitted).

decided, and Williams agreed, that Cates' testimony was crucial to the defense. Cates had testified twice before that the cocaine belonged to him, and he gave trial counsel no indication that his testimony would change on the day of trial. Furthermore, when Cates gave contradictory testimony at trial, defense counsel impeached him with his prior inconsistent statements.

Under these circumstances, the trial court did not err in rejecting Williams' ineffective assistance claim. As the trial court noted, "that [Cates] changed his testimony cannot be laid at counsel's feet as an indication of ineffectiveness."

3. Finally, Williams complains about procedural irregularities in the indictment. Although his arguments are not completely clear, he apparently contends that the grand jury was not in session when the indictment was returned, that the indictment was not delivered to a bailiff for presentment, and that the indictment was not unsealed by a judge in open court.

Williams has not cited any evidence that he raised these procedural challenges prior to his motion for new trial. Accordingly, they are waived:

> If the indictment was void *for any reason*, the question should have been raised by demurrer before pleading . . . or by motion in arrest of judgment after conviction. . . . Under controlling Supreme Court authority, [Williams'] motion for new trial cannot be considered to be a viable procedural substitute for a motion in arrest of judgment. . . . Therefore, [Williams] has failed to preserve any error alleging that the indictment was void.[14]

Furthermore, Williams has cited no evidence that the indictment was marred by procedural irregularity. At the hearing on his motion for new trial, Williams asserted that "there is no proof of a grand jury meeting," and he complained that no one had identified the bailiff who delivered or the judge who unsealed the indictment. At that hearing, however, the assistant district attorney testified that he, in fact, presented Williams' case to the grand jury. The prosecutor also explained that, after the grand jury votes on an indictment in Ware County, the indictment is sealed and delivered to the bailiff, who gives it to the clerk's office for presentment in open court. And the indictment itself states that it was received in open court on April 1, 1997, which, the prosecutor testified, was the day the judge actually

---

[14] (Citation, punctuation and footnote omitted.) *Parks v. State*, 246 Ga. App. 888, 889 (1) (543 SE2d 39) (2000).

opened it. The evidence offered at the new trial hearing, therefore, undermines Williams' claims of procedural irregularity.

Finally, Williams complains that the State redacted two of his co-defendants' names from the indictment after it nolle prossed the charges against them. The original indictment filed on April 1, 1997, was not redacted. The names of all four defendants appear on the face of that indictment. At some point, the State redacted the names of the two nolle prossed defendants, and the State admits that the court submitted the redacted indictment to the jury. Williams, however, has not shown that he objected to the use of the redacted indictment at trial, and the transcript reveals no objection when the trial court sent the indictment to the jury. By failing to object, Williams waived this claim of error.[15]

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED APRIL 17, 2002.

*McGee & McGee, James B. McGee III*, for appellant.
*Richard E. Currie, District Attorney*, for appellee.

