## S03A0608. JONES v. THE STATE.
(586 SE2d 224)

BENHAM, Justice.

Appellant Jimmie Lee Jones was convicted of felony murder and possession of a firearm during the commission of a crime in connection with the death of Robert Amos.[1] After reviewing the errors raised on appeal, we affirm the judgment of conviction.

1. The State presented evidence that the victim and the defendant lived in the same rooming house in Fulton County, and that the victim died from a perforated brain injury after having been shot in the head. A .25-caliber metal-jacketed bullet was recovered from the victim's body. Another occupant of the house testified he had given the victim a telephone message to call his mother and the victim had left the witness to do so. Moments later, the witness heard appellant walking up and down the hallway threatening to have the other tenants evicted and threatening to shoot them. The witness heard appellant announce he was going to call the landlord and heard him pick up the hall telephone receiver. The witness then heard the victim tell appellant he was on the phone. Using curse words, appellant ordered the victim to get off the phone and slammed the receiver down. The witness then heard the victim walk three steps out of his room, heard appellant say he was not afraid and he had two guns, heard a gunshot and a heavy object fall to the ground, and then heard the door leading to appellant's room close. When the witness opened his room's door to the hallway, he saw the victim lying in the hallway with a gunshot wound to his head. Police officers who responded to a report that a man had been shot at the residence found a .25-caliber pistol under the carpet on the interior side of the doorjamb to appellant's room. A firearms examiner from the State Crime Lab testified the bullet removed from the victim had been fired by the gun found under the carpet. Tests run on swabbings of appellant's hands revealed the presence of elements characteristic of gunshot residue. The evidence was sufficient to authorize a rational

---

[1] The victim was killed on February 28, 1998, and appellant was arrested the same day. On September 25, 1998, the Fulton County grand jury returned a true bill of indictment charging appellant with malice murder, felony murder (aggravated assault), aggravated assault, and possession of a firearm during the commission of a crime. Appellant's trial commenced on December 8, 1999, and concluded on December 14 with the jury's return of guilty verdicts on the counts charging appellant with felony murder, aggravated assault, and firearm possession. The trial court sentenced appellant on December 20 to life imprisonment on the felony murder conviction and a consecutive five-year term of imprisonment on the firearm possession conviction. The aggravated assault conviction merged into the felony murder conviction, and appellant was acquitted of the malice murder charge. Appellant's motion for new trial, filed January 11, 2000, and amended September 17, 2002, was denied October 16, 2002. The notice of appeal was filed on November 14, 2002, and the case was docketed in this Court on January 2, 2003. It was submitted for decision on the briefs.

trier of fact to find appellant guilty beyond a reasonable doubt of felony murder (aggravated assault) and possession of a firearm during the commission of a crime. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant maintains the testimony concerning the discovery of gunshot residue on one of appellant's hands should not have been admitted because the handwipings that revealed the presence of the residue were an unlawful search that violated the constitutional privilege against self-incrimination. "Swabbing the hands of an accused to lift gunshot residue does not constitute an unconstitutional search or seizure; and testimony of an expert concerning the swabbing procedure, its physical results and his opinion based on those results does not violate the privilege of the accused against self-incrimination. [Cits.]" *Strickland v. State*, 247 Ga. 219, 225 (18) (275 SE2d 29) (1981). See also *Lawler v. State*, 276 Ga. 229 (4) (e) (576 SE2d 841) (2003). Accordingly, appellant's contention is without merit.

3. Appellant also complains that the testimony concerning gunshot residue should not have been admitted because the atomic absorption test, the methodology used to test the swabbing results, was outdated and not scientifically reliable.

> [T]o determine the admissibility of a scientific procedure in evidence . . . it is proper for the trial [court] to decide whether the procedure or technique in question has reached a scientific stage of verifiable certainty . . . from evidence presented to it . . . or . . . exhibits, treatises, or the rationale of cases in other jurisdictions. . . . Once a procedure has been recognized in a substantial number of courts, a trial judge may judicially notice, without receiving evidence, that the procedure has been established with verifiable certainty. . . .

*Harper v. State*, 249 Ga. 519, 525-526 (292 SE2d 389) (1982). After consulting case law from other jurisdictions and holding a hearing at which experts testified, the trial court determined that the atomic absorption test, which tests for the presence of barium, lead, and antimony, the elements in the primer of a center-fire cartridge, was not a novel scientific issue (compare *Caldwell v. State*, 260 Ga. 278 (1) (393 SE2d 436) (1990), in which the admissibility of DNA identification evidence was discussed); that the test had gained general acceptance in the scientific community; and that the test had reached a scientific stage of verifiable certainty. Accordingly, the trial court ruled admissible testimony that atomic absorption tests on swabbings of appellant's hands had revealed elements consistent with

gunshot residue.

As noted by the trial court, the appellate courts of several States have upheld the admission of atomic absorption test results as being the product of a test of sufficient scientific reliability. See, e.g., *State v. Crowder*, 285 N.C. 42 (203 SE2d 38) (1974), death penalty vacated, 428 U. S. 903 (96 SC 3205, 49 LE2d 1207) (1976); *People v. Cole*, 524 NE2d 926, 927 (Ill. App. 1988); *State v. Chatman*, 383 A2d 440, 442 (N.J. Super. AD 1978). We upheld the admission of atomic absorption test results against a contention the test was scientifically unreliable in *Jones v. State*, 273 Ga. 231 (12) (539 SE2d 154) (2000), where there was no expert evidence that the test was considered unreliable. In the case at bar, appellant presented an expert, the GBI's retired firearms supervisor, who testified the atomic absorption test is scientifically accepted but is losing its validity because the propensity of barium and antimony to be found together is more common in today's "high-tech" world and because there are better methods for the detection of gunshot residue. Appellant's expert acknowledged that the GBI microanalyst used proper procedures and made the determination that the witness would have made had he performed the test using GBI protocol. We conclude the trial court did not err when it determined from the expert testimony presented and from the rationale used by appellate courts in other jurisdictions that the atomic absorption test is verifiably certain and the test results are admissible in evidence. See *Harper v. State*, supra, 249 Ga. at 525. We concur with the trial court's decision that the existence of technological advances that purportedly have made barium and antimony more common in the environment, the failure to test the gun itself, and the lack of "blind" testing, go to the weight to be accorded the evidence rather than to its admissibility.

4. Appellant contends the trial court erroneously commented on the evidence in a curative instruction given following the denial of appellant's motion for mistrial during the State's opening statement.[2]

---

[2] In his opening statement, the prosecutor informed the jury that a technician "took a handwiping sample of the defendant for purpose of determining whether the defendant had fired a weapon." This remark was delivered shortly after the trial court had ruled that the atomic absorption test results did not establish a foundation for an opinion as to whether the defendant fired a gun, and the assistant district attorney had informed the court that the expert was going to testify that "the test revealed elements consistent with gunshot residue." After discussing the situation with counsel outside the presence of the jury and having the prosecutor correct his misstatement before the jury, the trial court told the jury that the test done on the swabbings of appellant's hands did not determine whether a person had fired a gun, but "shows characteristics of residue of elements consistent with gunshot." Appellant asked for a bench conference at which counsel complained that the trial court's use of "consistent" amounted to a statement of opinion on the evidence. The trial court then told the jury, "The last statement — it was intended to be that the test shows elements of gunshot residue."

OCGA § 17-8-57 prohibits "any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." "OCGA § 17-8-57 is only violated when the trial court's [instruction] assumes certain things as facts and intimates to the jury what the judge believes the evidence to be. [Cits.]" *Mullinax v. State*, 255 Ga. 442, 445 (4) (339 SE2d 704) (1986). The trial court's use of "consistent" in its curative instructions following appellant's motion for mistrial did not assume certain things as fact and did not intimate to the jury what the judge believed the evidence to be. Instead, the trial court, using a term to which defense counsel did not object when the prosecutor informed the court of the extent of his expert's testimony, attempted to inform the jury of the limited nature of the expert testimony inaccurately summarized by the prosecutor in his opening statement. Appellant's contention on appeal is without merit.

5. Appellant next contends the trial court erred when it did not permit a defense witness to give opinion testimony regarding an experiment she had conducted at the scene of the crime. The witness, an investigator who formerly worked as an ID technician for the Atlanta police department, was now employed by defense counsel.[3] The trial court sustained the State's objection to defense counsel's request for the witness's opinion whether someone could place a .25-caliber gun under the carpeting without the room's occupant being aware of the gun's presence. Appellant complains the trial court erred when it determined the question called for improper lay opinion testimony.

OCGA § 24-9-65 provides that any witness may give her opinion, with reasons therefore, when the issue to be decided by the jury is one of opinion. If, however, the issue for the jury is one of fact, "the opinions of witnesses shall be generally inadmissible." A lay witness may give the opinion she reached based upon facts she observed as to the competency of a defendant to stand trial (*Spencer v. State*, 236 Ga. 697 (4) (c) (224 SE2d 910) (1976); whether a defendant was under the influence of intoxicants (*Hayes v. State*, 208 Ga. App. 627 (1) (431 SE2d 430) (1993); whether a defendant was defending himself (*Campbell v. State*, 269 Ga. 186 (5) (496 SE2d 724) (1998)), because these are issues of opinion. In the case at bar, the issue of the visibil-

---

[3] She testified she had visited appellant's boarding house some months after the victim was killed. While there, she entered appellant's room, closed the door, and had a colleague place an object similar in size to the murder weapon under the carpet that extended from appellant's room into the hallway. The witness testified that, both from her vantage point in appellant's room and once she opened the door and looked down at the carpet and floor, she had been unable to detect the placement of the object under the carpet.

ity of the bulge produced by an object placed under carpeting is not one of opinion, but of fact, so "the opinions of witnesses shall be generally inadmissible." OCGA § 24-9-65. Accordingly, the trial court's ruling was not error.

6. In a pre-trial hearing, the trial court granted appellant's motion in limine that the word "barricade" not be used to describe the delay in arresting appellant "until such time as the State has made the showing. . . ." At trial, a police officer gave an answer concerning "where the suspect was supposedly barricaded." The trial court denied appellant's motion for mistrial, ruled the answer non-responsive, and instructed the jury to disregard it. The renewed motion for mistrial was denied, and appellant sees error in that ruling. However, "[w]hether to grant a mistrial is a matter within the discretion of the trial court, and that discretion will not be interfered with on appeal 'unless it is apparent that a mistrial is essential to the preservation of the right to a fair trial. . . .' [Cit.]" *Cowards v. State*, 266 Ga. 191, 194 (3) (c) (465 SE2d 677) (1996). Since our review of the record leads us to conclude appellant received a fair trial, the trial court's denial of the motion for mistrial will not be interfered with on appeal. Id.

7. Appellant next takes issue with the trial court's instructions to the jury on aggravated assault. The indictment charged appellant with committing aggravated assault by unlawfully assaulting the victim by shooting him with a deadly weapon. See OCGA § 16-5-21 (a) (2). In its charge to the jury, the trial court covered subsections (a) (2) and (a) (3) of the Code section. Appellant contends the trial court's charge erroneously expanded the indictment. Pretermitting any determination of the enumerated error is the fact that the trial transcript reflects that trial counsel and the prosecutor indicated to the trial court that subsections (a) and (b) of the aggravated assault statute were to be charged. Appellant will not be heard now to complain of the charge he agreed the trial court should give. *Scott v. State*, 274 Ga. 476 (5) (554 SE2d 488) (2001).

8. Appellant contends the trial court erred when it failed to give appellant's requested instruction on voluntary manslaughter as an offense included in felony murder. In its charge to the jury, the trial court gave the law of malice murder and felony murder/aggravated assault and pointed out that the jury "must first determine whether mitigating evidence, if any, would cause the offense or offenses to be reduced to voluntary manslaughter" before a guilty verdict could be returned on either the malice murder or the felony murder count. After giving the law on voluntary manslaughter, the trial court reminded the jury it could not return a guilty verdict on the felony murder charge if it found the killing was a result of passion or provocation, but that such a finding would authorize a finding of voluntary

manslaughter. See *Edge v. State*, 261 Ga. 865, 867, n. 3 (414 SE2d 463) (1995). The charge given by the trial court was a correct statement of the law, and the failure to use a defendant's suggested language to convey to the jury a principle of law accurately covered in the charge is not error. *Ward v. State*, 271 Ga. 648 (7) (a) (520 SE2d 205) (1999).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 15, 2003.

*Kathryn R. Elwart, Lashawn E. Mikell*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney, Thurbert E. Baker, Attorney General, Ruth M. Pawlak, Assistant Attorney General*, for appellee.