## S09A1338. MISTER v. THE STATE.
(687 SE2d 471)

NAHMIAS, Justice.

Demarcus Mister, Timothy Walker, and Willie Moore were jointly indicted for various crimes stemming from the shooting death of Marcus Talton and the shooting of John Johnson. Walker and Moore pled guilty to voluntary manslaughter for the shooting of Talton and aggravated assault for the shooting of Johnson and testified for the State at trial. A jury found Mister not guilty of malice murder, but guilty of felony murder and aggravated assault.[1] Mister now appeals, and for the reasons that follow, we affirm.

1. About 1:30 p.m. on April 27, 2007, Gwinnett County police responded to a call of a shooting at the Bridgewater Apartments and found Talton lying at the bottom of a flight of stairs. Talton later died from injuries from a single gunshot wound. Talton, however, was conscious when the police arrived and told an officer that he had been shot by a person he knew as "Capone." Talton also told the officer that "Capone" drove a Nissan truck. Evidence at trial showed that Moore's nickname was "Capone," but that Mister drove a Nissan truck. Several witnesses who called 911 told the operator that the victim told them that "Capone" had shot him.

Johnson testified that he and Talton went to the Bridgewater Apartments about 1:00 to 1:30 p.m. to buy 10 kilos of cocaine for $170,000. Neither Johnson nor Talton lived at Bridgewater, and they did not take $170,000 with them, as they wanted to "check out" the drugs before buying them. Johnson was acquainted with Moore and Walker, but did not know Mister. Johnson testified that Talton set up the drug deal, and that, when he and Talton arrived at the apartment

---

[1] The crimes occurred on April 27, 2007, and Mister was indicted on August 8, 2007, for malice murder, two counts of felony murder, and two counts of aggravated assault against Johnson. A jury found Mister guilty of the felony murder of Talton and the aggravated assaults of Johnson on December 14, 2007. On March 13, 2008, the trial court sentenced Mister to life in prison for felony murder and to 20 consecutive years in prison for aggravated assault. The court merged one felony murder conviction and one aggravated assault conviction with the other convictions for those crimes. On December 30, 2008, the trial court denied Mister's motion for new trial, as amended. On January 20, 2009, Mister filed a notice of appeal, and on April 28, 2009, the appeal was docketed in this Court. The appeal was subsequently submitted for decision on the parties' briefs.

complex, Mister met them in the parking lot, led them into a breezeway, and down a stairwell. Talton was walking in front of Johnson. Before they got to the bottom of the stairwell, Johnson saw two people wearing masks jump out from behind the stairwell. One of them pointed a gun at him and started shooting. Johnson turned and ran but was shot in the leg. He ran to his car, got in, and drove to a hospital. Johnson testified that he did not see Talton get shot.

Walker testified that, at the time of the crimes, he had known Mister about a year and Moore about three years. According to Walker, Mister drove him and Moore to the Bridgewater Apartments on the day of the crimes with the intention of robbing Johnson and Talton. Walker testified that he, Moore, and Mister all discussed the robbery the day before it happened, and they told the victims they would sell them 10 kilos of cocaine as a ploy. When they arrived at the apartments, Talton called Moore to set up a place to meet. Talton and Johnson parked in the upper level of the parking lot, and Walker, Mister, and Moore parked in the lower level. Moore told the victims he would send Mister to the upper level to get them. At that point, Walker put on a ski mask and Moore put a shirt over his head, and they both hid under the stairwell. Walker and Moore were armed with 9mm handguns, and Mister had a .40-caliber handgun. Walker testified that he heard Mister, Talton, and Johnson talking as they were coming down the stairs, that, as they neared the bottom, Mister turned around and shot Talton, that Moore jumped out and fired one or two shots, and that he (Walker) shot at Johnson, who was running back up the stairs. Walker added that neither Talton nor Johnson pulled a gun.

Willie Moore testified that he had known Mister about three years. He, Mister, and Walker devised a plan to rob Talton and Johnson by telling the victims they would sell the victims 10 kilos of cocaine, when, in fact, they never had any cocaine and intended to rob the victims of the $170,000 they were supposed to bring for the purchase. Moore testified that, using his cell phone, he and Mister both talked with Talton about the fake drug deal. On the day of the crime, Moore and Walker both had 9mm handguns, and Mister had a .40-caliber handgun. According to Moore, at about 1:00 to 1:30 p.m., the co-defendants pulled into the lower level of the Bridgewater Apartments in Mister's Nissan truck. They told the victims to pull into the upper level parking lot. Moore testified that the co-defendants parked in the lower level so that, when Mister went to the upper parking lot to get Johnson and Talton, he would come out of a breezeway after walking up the stairs, making it appear he was coming from an apartment. None of the co-defendants actually lived in the apartment complex. Moore told Talton and Johnson that he was sending Mister out to get them and that he would take them into

an apartment where they would count the money.

Before Mister walked up the stairs, Walker put on a ski mask, and Moore put a black t-shirt over his head. After Mister walked up the stairs, Moore and Walker hid under the stairwell. Moore testified that he heard Mister, Johnson, and Talton walking down the stairs, but that he then did not hear any more footsteps. At that point, he stepped out from under the stairwell, saw Johnson, and pointed his gun at Johnson. Johnson began to run, and Moore fired at him. Moore heard two other shots and chased Johnson up the stairs. Johnson, however, got to his car and drove off. When Moore came back down the stairs, he saw Talton lying on the ground in a fetal position. Moore testified that Mister fired his gun once and shot Talton and that Walker also fired only once.

Police investigators discovered two 9mm shell casings and one .40-caliber casing at the crime scene. Forensic evidence showed that the two 9mm casings were fired from two different guns and that the bullet that killed Talton was fired from a .40-caliber pistol. Phone records showed numerous calls on April 26 and 27 between Talton's cell phone and cell phones owned by Mister and Moore. Phone records also showed that Mister talked to Moore five times on April 25, four times on April 26, once on the morning of April 27 before the shooting, once in the afternoon of April 27 after the shooting, and twice on April 28.

Mister testified that, on the Monday before the shooting of Talton on Friday, one of Talton's cousins asked Mister if he knew anyone who could sell him some cocaine. Mister responded that he knew that Moore had some cocaine to sell. Mister said that Talton called him the next day about buying the cocaine and that he gave Moore's cell phone number to Talton and arranged a meeting between the two of them the day before the crimes. Mister testified that, before the crimes, he did not hear any discussion of a robbery and thought he, Moore, and Walker were simply going to sell drugs to the victims. He also claimed he never had a gun. According to Mister, when he was walking with the victims down the stairwell, Moore and Walker came out of hiding and began shooting at the victims. Mister added that the three co-defendants ran to his car, and that he then drove Walker and Moore to their cars at a hotel where they had initially met. Moore was driving a rental car, and Mister followed Moore to the rental company and then drove him to meet his aunt. Mister admitted that he talked to Moore on the phone later that day and twice the next day.

Viewed in the light most favorable to the verdict, the evidence was easily sufficient for the jury rationally to have found Mister guilty beyond a reasonable doubt of the crimes of which he was

306

convicted. *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SC 2781, 61 LE2d 560) (1979).

2. Contrary to Mister's contention, the trial court did not err in permitting the State to run a criminal background check on a prospective juror who gave his permission for the check because he was unsure whether he remained a convicted felon based on a plea of guilty to kidnapping 22 years earlier or whether his record was "washed away" or "expunged." *Sears v. State*, 262 Ga. 805, 808 (426 SE2d 553) (1993) (no prohibition on prosecution running criminal background checks on prospective jurors). Although Mister now contends that the State's background check violated his Sixth Amendment right to counsel and due process, Mister's only objection at trial was that the juror's statement that he believed his record was "expunged" meant that he was no longer a convicted felon, making it unnecessary to run a check. Because Mister did not raise these other issues at trial, he is barred from raising them on appeal. *Hicks v. State*, 285 Ga. 386, 389 (677 SE2d 111) (2009).

3. Mister contends the trial court abused its discretion when it denied his motion for mistrial after Moore, in response to a question from defense counsel, testified that he and Mister "knowed what we was doing, we was running around robbing people." According to Mister, Moore's statement was not responsive to defense counsel's question and improperly placed Mister's character in evidence. This Court, however, has repeatedly held that " 'a nonresponsive answer that impacts negatively on a defendant's character does not improperly place the defendant's character in issue.' " *Banks v. State*, 281 Ga. 678, 682 (642 SE2d 679) (2007) (quoting *Hinely v. State*, 275 Ga. 777, 782 (573 SE2d 66) (2002)). Furthermore, a mistrial is warranted only if essential to preserve a defendant's right to a fair trial, and the trial court is vested with broad discretion in making this determination. Id. at 681-682. Here, the trial court instructed the jury to disregard Moore's isolated and nonresponsive answer, and it did not abuse its discretion in denying Mister's motion for mistrial. Id.

4. Mister contends the trial court erred in permitting the State to question Moore about his prior consistent statements regarding the crimes that he gave at his guilty plea hearing about one month before Mister's trial. "A witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement 'if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination.' " *Duggan v. State*, 285 Ga. 363, 366 (677 SE2d 92) (2009) (quoting *Hunt v. State*, 279 Ga. 3, 5 (608 SE2d 616) (2005)). "[T]o be admissible to refute the allegation of recent fabrication, improper influence, or improper motive, the prior statement must 'predate the alleged fabrication, influence, or motive.' " Id. at 366 (quoting *Tome v. United States*, 513 U. S. 150,

158 (115 SC 696, 130 LE2d 574) (1995)). Here, the prior statements by Moore at his guilty plea hearing did not predate any improper motive he may have had to testify against Mister, which clearly existed by the time of the plea hearing where the statements were made and where Moore pled guilty to reduced charges in exchange for cooperating against Mister. The trial court therefore erred in permitting Moore to testify about his prior consistent statements. The error, however, was harmless given the overwhelming evidence of Mister's guilt that arose from Moore's testimony not related to these limited statements, the testimony of other witnesses, and corroboration by forensic evidence. See *Duggan*, 285 Ga. at 366-367 (in determining whether error in admitting prior consistent statements of a witness is harmless, court may not rely on the fact that the witness gave testimony at trial that was consistent with the prior statements).

5. Mister raises several issues regarding the trial court's charge on conspiracy.

(a) Mister contends the trial court erred in giving the State's ninth request to charge, which provided that a "conspiracy is an agreement between two or more people to do an unlawful act," that "any act done by any party to the conspiracy to further the unlawful enterprise is considered to be the act of all of the conspirators," and that one conspirator is responsible for the acts of another conspirator "only insofar as such acts are naturally and necessarily done to further the conspiracy." Mister contends the evidence did not support the charge. More specifically, Mister contends that, because he testified he understood that the three co-defendants would be selling drugs to the victims and because Walker and Moore testified they understood the plan was to rob the victims, there was no conspiracy between the three men and thus no evidence to support the charge. We disagree. Moore and Walker testified that all three co-defendants discussed and agreed to a plan to rob the victims pursuant to a fake drug sale. This evidence clearly supports the charge on conspiracy. *Mangum v. State*, 274 Ga. 573, 578 (555 SE2d 451) (2001).

(b) Mister also contends that the trial court erred by not defining the object of the conspiracy for the jury. Mister, however, was not charged with the substantive crime of conspiracy. OCGA § 16-4-8. Instead, the charge on conspiracy was given as a theory by which the jury could connect Mister as a party to the crimes in question based on his agreement with Moore and Walker. See Robert E. Cleary, Jr., Kurtz Criminal Offenses and Defenses in Georgia, p. 220 (2008 ed.); *Scott v. State*, 229 Ga. 541, 544 (192 SE2d 367) (1972). It is well settled that whether a conspiracy exists "is a question for the jury to determine." *Turner v. State*, 275 Ga. 343, 345 (566 SE2d 676) (2002);

*Freeman v. State*, 273 Ga. 137, 139 (539 SE2d 127) (2000). Here, the trial court did not charge that the object of the uncharged conspiracy was, as the State suggested, a robbery, or was, as Mister suggested, a drug sale. It was not error, in this situation, to leave that determination to the jury.

(c) Mister contends the trial court erred in giving the State's tenth request to charge, which instructed the jury that "presence, companionship, and conduct before and after the commission of the alleged offense may be considered by you in determining whether or not such circumstances, if any, give rise to an inference of existence of a conspiracy." The charge, however, was a correct statement of the law and was warranted by the evidence in this case. *Johnson v. State*, 275 Ga. 650, 653-654 (571 SE2d 782) (2002); *Turner*, 275 Ga. at 345.

6. In response to the jury's question whether it could "use the fact that they were there to deal drugs as felony crime in this case," the trial court re-charged on the law of conspiracy as set forth in the State's ninth request to charge and also charged the jury that only aggravated assault, and not a finding of conspiracy, could be used as the underlying felony for the felony murder charges. Mister's only objection at trial, which he repeats on appeal, was that the court's decision to re-charge on conspiracy and felony murder was error because it was unclear which one of those charges the jury was confused about and the court should have asked the jury to clarify its question before re-charging. However, because the re-charge contained correct statements of the law and was adjusted to the evidence, we conclude that the re-charge would not have misled or confused the jury and was not an abuse of discretion. *Madison v. State*, 281 Ga. 640, 643 (641 SE2d 789) (2007).

Mister now raises two other issues regarding the substance of the re-charge. At trial, however, when the trial court asked Mister if he agreed to the re-charge that Mister, the prosecutor, and the court had drafted, Mister stated that he did not agree to re-charging without clarifying the meaning of the jury's question, but that, if the court were going to re-charge without a clarification, he agreed to the substance of the re-charge. Furthermore, when the trial court asked for objections after re-charging the jury, Mister said he had none. For these reasons, Mister may not complain of these issues on appeal. *Delacruz v. State*, 280 Ga. 392, 398 (627 SE2d 579) (2006); *Jones v. State*, 277 Ga. 36, 40 (586 SE2d 224) (2003).

7. In response to a later request by the jury to "hear the definition of conspiracy," Mister contends the trial court erred by re-charging only on the definition of conspiracy contained in the State's ninth request to charge and by failing to repeat the State's tenth request to charge, which provided that the jury may infer the existence of a conspiracy based on a defendant's "presence, compan-

ionship, and conduct with his co-defendants before and after the commission of the offense." Again, however, Mister agreed to the substance of the re-charge and may not complain of it on appeal. *Delacruz*, 280 Ga. at 398; *Jones*, 277 Ga. at 40.

8. Mister contends that his sentence of 20 years in prison for his aggravated assault conviction constitutes cruel and unusual punishment. Mister, however, did not raise this issue below, and is therefore barred from doing so on appeal. *Butts v. State*, 273 Ga. 760, 771 (546 SE2d 472) (2001).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 23, 2009 —
RECONSIDERATION DENIED DECEMBER 15, 2009.

*Wayne L. Burnaine*, for appellant.
*Daniel J. Porter, District Attorney, Wesley C. Ross, Assistant District Attorney, Thurbert E. Baker, Attorney General, Christopher R. Johnson, Assistant Attorney General*, for appellee.