**SECOND DIVISION
BARNES, P. J.,
ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**December 14, 2012**

# In the Court of Appeals of Georgia

A12A1423. DAVIS v. THE STATE.                              AD-054C

ADAMS, Judge.

Undreas Davis was convicted by a jury of three counts of theft by taking and twelve counts of financial identity fraud.[1] Davis appeals the trial court's judgment sentencing him as a recidivist to fifteen consecutive ten-year terms, for a total of one hundred fifty years, without the possibility of parole. Davis contends that the trial court abused its discretion in sentencing him to a grossly disproportionate sentence

---

[1] Although Davis's notice of appeal also cites the order denying his motion for new trial on the general grounds and the trial court denied Davis's motion without a hearing, Davis does not argue on appeal that the evidence was insufficient to support his convictions. Moreover, the appellate record contains no trial transcript. Accordingly, we cannot address the facts underlying Davis's convictions, and we must assume that the trial court properly denied the motion for new trial on the general grounds. See *Arnold v. State*, 305 Ga. App. 45, 48 (2) (699 SE2d 77) (2010) (in absence of transcript, appellate court must presume trial court's findings on evidence were correct). Thus, Davis's convictions must be affirmed.

of 150 years without the possibility of parole for these property crimes and further asserts that the trial court erred in considering his federal conviction for purposes of recidivist sentencing under OCGA § 17-10–7 (c). But Davis failed to raise any issue regarding the disproportionality of his sentence in the trial court, and thus we cannot reach that issue on appeal. Nevertheless, we agree with Davis that the trial court erred in considering his federal conviction as a basis for recidivist sentencing, and we accordingly vacate the sentence and remand for re-sentencing in accordance with this opinion.

Davis was convicted on March 30, 2009, and his sentencing hearing began on April 13, 2009. At that hearing, the prosecution introduced certified copies of three prior felony convictions, two from Michigan and one federal, in support of the State's request for recidivist sentencing. Davis posed no objection to the two Michigan convictions, which were for uttering and publishing a false, forged, altered or counterfeit instrument and for making a false statement of a material fact in an application for a certificate of title. Davis's counsel objected, however, to the introduction of his federal felony conviction for theft or receipt of stolen mail in violation of 18 U. S. C. § 1708, arguing that the State had failed to establish that this violation would be considered a felony under Georgia law as required under OCGA

§ 17-10-7 (c). The trial court continued the sentencing hearing at the State's request "to give the State an opportunity to show the Court whether or not this conviction can be considered by the Court in terms of imposing recidivist punishment. . . ."

When the hearing continued on May 5, 2009, the State proffered additional evidence concerning Davis's federal conviction for theft by receiving stolen mail, including a Rule 11 plea agreement, a transcript of Davis's guilty plea hearing and testimony from Davis's Georgia federal probation officer. The plea agreement and the transcript were admitted without objection. Although the prosecution represented that it was introducing a certified copy of the Rule 11 plea agreement, the only copy in the record is uncertified and is part of a packet of materials prepared and attached to a memorandum from Davis's federal probation officer in Georgia, which was addressed to the trial judge and counsel. The record does not contain a transcript of Davis's guilty plea. The prosecutor noted that the plea agreement contained stipulations by Davis admitting that he had possessed at least 800 pieces of mail at his residence; the mail was stolen; the mail contained the names and addresses of individuals who did not reside at his address; and the contents of the stolen mail were used to cause a loss of at least $10,600 to postal patrons. Additionally, Davis's federal probation officer testified, again without objection, based upon her reading of a federal pre-sentencing

3

report, presumably prepared in Michigan where the crime occurred, that Davis had used "several credit cards to purchase several items," and that she "believe[d]" that in 2003 one transaction occurred in which he purchased $5300 in equipment. It does not appear that the pre-sentencing report was introduced into evidence.

Although the trial court acknowledged it was a close question, the court found, based upon this evidence, "that the conduct that [] Davis is currently on federal probation for is virtually identical to the conduct for which he has been convicted by the jury in this case, the possession of other persons' identifying information, specifically mail[2] that at least, . . . , has your name on it and names are identifying information as listed in the statute." In addition, the trial court found that the information that the victims in the federal case had suffered a loss in excess of $10,000, made the federal conviction subject to consideration under OCGA § 17-10-7 (c). Accordingly, the trial court sentenced Davis as a recidivist to ten years for each of the fifteen convictions, running consecutively to one another, by stating:

> I find that Mr. Davis is a career criminal. . . . Because other
> jurisdictions and other courts have refused to call Mr.

---

[2] The trial court also indicated that credit cards Davis apparently used to make purchases belonged to the mayor of Douglasville and his wife, and that the mayor was present at the sentencing hearing.

Davis to justice, he's been allowed to roam free and victimize other people. Which is so often the case that people's criminal careers come to an end in Douglas County, Georgia as yours ha[s], Mr. Davis, because it's the sentence of the Court that you serve ten years in prison for all 15 counts, all those sentences to run consecutively for a total of 150 years without benefit of parole. You will never victimize anyone again, sir, because you'll be in prison for the rest of your life.

After the judge pronounced sentence, Davis attempted to speak, but the judge stopped him, stating "I don't want to hear anything from you. You can go to jail and go to prison, sir."

1. Davis contends that the trial court abused its discretion in sentencing him to fifteen consecutive ten-year sentences without the possibility of parole for the property crimes charged in this case, amounting to cruel and unusual punishment. Although Davis's argument may have merit, we cannot reach the issue because Davis failed to raise it below. See *Mister v. State*, 286 Ga. 303, 309 (8) (687 SE2d 471) (2009); *Franklin v. State*, 268 Ga. 865, 867 (5) (494 SE2d 327) (1998).[3]

---

[3] Although we cannot address this argument, Davis presumably may seek further relief, including asserting any claims of ineffective assistance of counsel, in a petition for habeas corpus. See OCGA § 9-14-48 (d).

Davis did not raise the issue at his sentencing hearing[4] or in any filing before the trial court. Although Davis asserted the general grounds in his motion for new trial, including an assertion that "the verdict and sentence are contrary to law and the principles of justice and equity," he never contended that his sentence was disproportionate or otherwise cruel and unusual. And, in fact, the attorney appointed to assist Davis post-conviction apparently informed the judge that no issues required an evidentiary hearing, that a hearing was waived and that she was asking the judge to deny Davis's motion for new trial so that the case could proceed to this Court. The trial court denied the motion for new trial after noting that

> the net effect of the procedure requested by the defendant is to prevent this court from considering, and addressing its own errors if any occurred. Thus, if the court denies the Motion, the case will proceed to the Court of Appeals upon claims of error not submitted to this court for its consideration.

Given these facts, we cannot say that the issue was preserved for appellate review.

---

[4] Davis does not raise, and therefore we do not address, the issue of whether he was improperly prevented from making any exception to his sentence when the trial judge preempted him at the sentencing hearing, indicating that he did not want to hear "anything" from him.

2. Davis also argues that the State failed to establish that his prior federal conviction was a crime, which if committed in Georgia, would be considered a felony, and thus the trial court erred in relying upon that conviction to impose recidivist sentencing under OCGA § 17-10-7. We agree.

The recidivist statute "imposes maximum sentences for any person convicted of a felony who was previously convicted under the laws of any other state [or of the United States] of a crime which if committed within this state would be a felony." (Punctuation and footnote omitted.) *Woodson v. State,* 242 Ga. App. 67, 70 (4) (530 SE2d 2) (2000). See OCGA § 17-10-7 (a). "In turn, if the person has three such prior felony convictions, upon a fourth felony conviction the person must serve the sentence without the possibility of parole. See OCGA § 17-10-7 (c)." *Nelson v. State*, 277 Ga. App. 92, 99-100 (625 SE2d 465) (2005). "The burden is on the state to produce *competent* evidence of a prior conviction for purposes of sentencing." (Citation omitted and emphasis supplied.) *Brinkley v. State*, 301 Ga. App. 827, 830 (2) (689 SE2d 116) (2009). "The State bears the burden of showing that the foreign convictions were for conduct which would be considered felonious under the laws of this state. . . ." (Punctuation and footnote omitted.) *Woodson v. State*, 242 Ga. App. at 70 (4). And "[f]ailure to properly prove the prior convictions requires remand and

7

resentencing." (Footnote omitted.) Id. We find that the State failed to carry its burden with regard to Davis's prior federal conviction.

The federal indictment charging Davis with theft or receipt of stolen mail under 18 U.S.C. § 1708 alleges that he "did knowingly and unlawfully possess stolen mail and articles contained therein, to wit: mail stolen from the personal mailboxes of postal patrons residing in [two counties], with knowledge that said mail and the articles contained therein were stolen. . . ." The federal statute at issue makes theft or other interference with the mail or receipt of stolen mail a felony, without regard to intent or value. 18 U.S.C. § 1708. Georgia law contains no comparable provision criminalizing the theft or possession of stolen mail per se. Thus, the State bore the burden of showing that Davis's conduct would be considered felonious in this State.

The most closely related offenses under Georgia law are theft by taking (OCGA § 16-8-2)[5] and theft by receiving stolen property (OCGA § 16-8-7).[6] And in

---

[5] We note, however, that Davis was not charged with and apparently did not admit stealing the mail, but rather only possessing stolen mail.

[6] Although the State argues that financial identity fraud (OCGA § 16-9-121) was also closely related to the federal statute, that statute requires more than mere possession. It requires willful or fraudulent possession "with intent to fraudulently use identifying information concerning a person" or a "deceased person." OCGA § 16-9-121 (a) (1) and (3). And the State presented no admissible evidence concerning Davis's intent in possessing the mail involved in the federal conviction. Accordingly,

October 2003, when the federal offense occurred, each of these crimes would have been considered a felony only if the property had a value in excess of $500, and even then such crimes could have been treated as misdemeanors at the discretion of the trial judge. See OCGA § 16-8-12 (a) (1) (as enacted by Ga. L. 2003, § 1, p. 177, effective May 15, 2003).

The prosecutor represented that Davis admitted possessing at least 800 pieces of stolen mail addressed to others and that the mail was used to cause losses in excess of $10,000 to others. But even though Davis or others may have used the mail to cause these losses, the State failed to prove how the losses occurred (i. e., whether the mail contained cash or other items valued in excess of $10,000 or whether the perpetrators used identifying information taken from the mail to commit credit card fraud, some other kind of fraud, etc.). Although Davis's probation officer testified from her recollection of reading a federal pre-sentencing report that the federal charge involved actions apparently similar to those in this case (i. e., that Davis had used credit cards and identifying information from the mail to purchase items), this evidence was double hearsay and thus was not probative to establish the fact as to how these losses arose, even in the absence of an objection by Davis. See *State v.*

_____

it is not analogous to the facts proved in connection with Davis's federal conviction.

9

*Hodges*, 291 Ga. 413, 420 (1) (1) (728 SE2d 582) (2012) ("mere hearsay about . . . a prior . . . act is not probative evidence as to whether the act *actually* occurred. . . .") (citation omitted). Cf. *Thomas v. State*, 310 Ga. App. 404, 413 (714 SE2d 37) (2011) ("[A] trial court cannot rely upon the hearsay statement of a prosecutor to establish a fact for purposes of sentencing.") (citation and punctuation omitted).

Moreover, the State presented no evidence concerning the value of the mail and certainly did not demonstrate that the mail or its contents had a value in excess of $500. Rather the evidence established only that Davis possessed stolen mail, which was all the federal statute required. "Thus, it is not necessarily the case that the defendant's federal conviction was for conduct which would be considered felonious under the laws of this state, and that conviction consequently cannot be considered a prior felony conviction within the meaning of OCGA § 17-10-7 [(c)]." *Wallace v. State*, 175 Ga. App. 685, 686 (6) (333 SE2d 874) (1985) (federal conviction for receiving, possessing, and concealing explosives could not be considered for recidivist punishment where analogous state crimes required additional proof of intent or of value in order to qualify as a felony). The trial court, therefore, erred in imposing a sentence without the possibility of parole under OCGA § 17-10-7 (c).

10

Accordingly, we vacate the sentence and remand for re-sentencing in accordance with this opinion.

*Sentence vacated and case remanded. Barnes, P. J.,concurs. McFadden, J., concurs fully and specially.*

A12A1423. DAVIS v. THE STATE.

MCFADDEN, Judge, concurring fully and specially.

I fully concur in the majority opinion. I agree that the holding in *Mister v. State*, 286 Ga. 303, 309 (8) (687 SE2d 471) (2009), appears to prohibit us from reaching the issue of whether Davis's sentence amounted to cruel and unusual punishment. And I accede to the majority's decision not to address sua sponte the question whether *Mister* is distinguishable on the basis that, after sentencing, trial court refused to allow the defendant to speak and announced that he did not want to hear "anything" from him.

I write separately to respectfully note that there is tension between Division 8 of *Mister* and the principle that "[a]n error of law has as its basis a specific ruling made by the trial court," not in the various arguments that might be raised as to the soundness of that ruling. *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999).

The pertinent division of *Mister* states, in its entirety:

Mister contends that his sentence of 20 years in prison for his aggravated assault conviction constitutes cruel and unusual punishment. Mister, however, did not raise this issue below, and is therefore barred from doing so on appeal. *Butts v. State*, 273 Ga. 760, 771 (546 SE2d 472) (2001).

*Mister*, 286 Ga. at 309 (8).

*Butts*, on which *Mister* relies, however, involved a challenge to the electric chair. It is one thing to hold, as did the court in *Butts*, that an appellant who argued for leniency in the particular case at bar did not thereby preserve the issue of the constitutionality of the statute authorizing execution by electrocution. It is another to hold, as did the court in *Mister*, that an appellant who argued for leniency did not thereby preserve the issue of whether the trial court's decision to opt for severity exceeded the outer boundaries of constitutionally permissible severity.

The holding in *Mister* is in tension with the Supreme Court's earlier holding that "the arguments supporting a position concerning a legal ruling are not themselves legal rulings. . . . Such arguments, however, must be addressed by the appellate court if necessary to its decision on the issue of the propriety of the trial court's ruling." *Felix*, 271 Ga. at 539 (addressing requirements as to the composition of an enumeration of the errors).

2

I am also concerned that the ruling in *Mister* puts litigants in a difficult position. Once a trial court has announced a ruling, the practice – at least among better lawyers – is to not presume an entitlement to continue to argue. And, as noted above, the trial court here was operating on the assumption that there is no such entitlement. I question the wisdom of mandating that parties do a thing they may not be entitled to do.