**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 6, 2016**

# In the Court of Appeals of Georgia

A16A1242. ANDERSON v. THE STATE.

BARNES, Presiding Judge.

A Cobb County jury found Charles Anderson guilty of armed robbery, and the trial court sentenced him as a recidivist to life imprisonment without parole. Anderson filed a motion for new trial, as amended, which the trial court denied. On appeal, Anderson contends that the trial court erred in allowing the State to introduce evidence of his recorded telephone conversations made from jail and in sentencing him as a recidivist. Anderson further contends that his trial counsel rendered ineffective assistance. For the reasons discussed below, we affirm.

"Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to sustain the verdict." *Anthony v. State*, 317 Ga. App. 807 (732 SE2d 845) (2012). So viewed, the evidence showed that Anderson's stepfather, Willie Plummer, lived in an apartment located on

Six Flags Drive in Cobb County. Plummer lived with his wife and his grandson, Dashon Hicks.

On Sunday morning, October 28, 2012, Anderson went to Plummer's apartment and asked Plummer if he could borrow his car. Plummer agreed, and Anderson left in the borrowed car with his nephew, Hicks, after asking Hicks to ride to work with him.

Instead of driving to work, however, Anderson drove with Hicks to Fayetteville, where they picked up another relative, Shantel Washington, and her boyfriend, Kenneth Eason. Anderson then drove the group to his own apartment in Atlanta, where he retrieved a change of clothes and a bag. After Anderson got back into the car, Washington, who was now driving, drove them to Six Flags Drive near where Plummer lived and parked down the street from a Waffle House. Anderson told Hicks that they were going to the restaurant to get their "adrenaline pumping."

Once Washington parked the car, Eason and Anderson got out and went toward the Waffle House. Eason donned a ski mask, and Anderson zipped up his hoodie over his face except for the eyes. Both men wore dark clothing.

According to witnesses inside the Waffle House, two men dressed in black with their faces covered entered the restaurant around noon when it was crowded with

2

customers. One of the men stood guard at the front entrance while the second man approached the cash register with a handgun, demanding money. The second man then jumped over the counter and grabbed the cash from the register while pointing a gun at a waitress. The witnesses' descriptions of the two men indicated that Eason was the man who stood guard at the door while Anderson brandished the handgun and grabbed the cash from the register.

Eason and Anderson ran from the Waffle House back to the car where Washington and Hicks were waiting. Washington drove the group away from the scene. However, as they drove away, the group realized that a person in a van was following them and was recording the car's tag number. Anderson told the others that he would call Plummer and tell him that his car had been stolen.

Washington drove to Anderson's apartment, and Anderson called Plummer and told him that someone had stolen his car when it was parked outside a store. Anderson encouraged Plummer to call the police and report the theft of the car, but Plummer told Anderson that he should make the call. Anderson made several more phone calls to Plummer in an unsuccessful attempt to have him call the police and report the car stolen. Anderson also moved Plummer's car a block away from his apartment and left it there.

Concerned about his car, Plummer went to Anderson's apartment to find out what had happened. When Plummer arrived at the apartment and asked about his car, Anderson told him it was parked around the corner. Plummer went to his car and found it undamaged with the keys still in the ignition. Because Anderson claimed the car had been stolen, Plummer called 911 at that point, and an Atlanta police officer arrived, looked over the car, and released the car back to Plummer. Plummer and Hicks then drove the car back to Plummer's apartment complex on Six Flags Drive.

In the meantime, the police had identified Plummer as the owner of the car involved in the Waffle House robbery based on the license tag number that had been provided by the driver of the van who had followed the car after the robbery. The police arrived at Plummer's apartment complex around the same time that Plummer and Hicks returned there with the car. The police stopped the car and detained Plummer and Hicks.

Plummer and Hicks agreed to be interviewed at the police station. Plummer told a detective about what had transpired with respect to his car and was released after his interview. Hicks initially denied any knowledge of the robbery and told a detective that Plummer's car had been stolen. Hicks later told the detective about the robbery and identified Anderson as one of the participants.

4

After speaking with Hicks, the detective obtained an arrest warrant for Anderson for armed robbery, and the police arrested him early the next morning. Anderson, Washington, and Eason were jointly indicted for armed robbery. Hicks was not charged with any offenses.

At Anderson's trial,[1] Plummer and Hicks testified to events as summarized above. Hicks also testified that he had not known about the planned Waffle House robbery until they were already driving to the restaurant, denied that he had participated in the robbery or kept any of the stolen cash, and testified that Anderson told him to tell the police that Plummer's car had been stolen and not to mention Anderson's name.

Several eyewitnesses to the robbery also testified, as did the lead detective assigned to the robbery investigation. Additionally, over defense objection, the State introduced into evidence and played for the jury recorded telephone calls that Anderson made to Hicks from jail. During the recorded calls, Anderson questioned

---

[1] Eason was separately tried and convicted of armed robbery, and his conviction was affirmed by this Court in *Eason v. State*, 331 Ga. App. 59 (769 SE2d 772) (2015). The status of Washington's case is unclear from the record.

Hicks about what he had told the police and admonished Hicks for revealing Anderson's participation in the robbery.

After the State rested, Anderson elected not to testify. He did not call any defense witnesses.

Upon hearing all the evidence, the jury found Anderson guilty of armed robbery. Following the guilty verdict, the State introduced certified copies of Anderson's three prior convictions, one of which was a nolo contendere plea to armed robbery in Michigan. Based on the three certified prior felony convictions, the trial court sentenced Anderson as a recidivist under OCGA § 17-10-7 (a) and (c) to life imprisonment without parole.

Anderson filed a motion for new trial. Anderson's was appointed new counsel who filed an amended motion, alleging that Anderson's recorded jail telephone conversations with Hicks had been improperly admitted at trial, that his recidivist sentence was improper, and that his trial counsel had rendered ineffective assistance. Following a hearing at which Anderson's trial counsel testified, the trial court denied Anderson's amended motion for new trial. This appeal followed.

1. Anderson contends that the trial court erred by allowing the State to introduce the two recorded telephone calls that he made to Hicks from jail. According

6

to Anderson, the recorded calls were inadmissible because they showed his bad character in that he used "street language and foul language" in the calls, and because the probative value of the calls was substantially outweighed by the danger of unfair prejudice. We disagree.

"It is well established that evidence that is relevant to an issue in the case is not rendered inadmissible simply because it incidentally puts the defendant's character at issue." *Jones v. State*, 283 Ga. App. 812, 813 (1) (642 SE2d 887) (2007). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401.[2] See *State v. Jones*, 297 Ga. 156, 159 (2) (773 SE2d 170) (2015). And while "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ," OCGA § 24-4-403, exclusion is "an extraordinary remedy which the courts should invoke sparingly, and the balance should be struck in favor of admissibility." (Punctuation and footnote omitted.) *Williams v. State*, 328 Ga. App. 876, 879 (1) (763

---

[2] Because Anderson's trial commenced in May 2014, Georgia's new evidence code applies. See Ga. Laws 2011, Act 52, § 101 (new evidence code "shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date").

SE2d 261) (2014). Furthermore, "as a general rule, admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse." (Punctuation and footnote omitted.) *Oliver v. State*, 329 Ga. App. 377, 379 (765 SE2d 606) (2014).

We discern no abuse of discretion by the trial court in admitting the recorded jail telephone calls. During the calls, Anderson quizzed Hicks about what he told the police about the robbery, and Anderson became upset when Hicks admitted that he had given the police Anderson's name. Anderson admonished Hicks for divulging his name to the police, reminding Hicks that he had told him not to bring up Anderson's name if questioned about the robbery. Anderson also asked Hicks if he told the police that Anderson had a gun. Additionally, Anderson told Hicks that the police would put "pressure" on Hicks while interviewing him, but that the pressure should not get to Hicks because Hicks had not done anything.

Anderson's statements in the recorded telephone calls were relevant and admissible to show his consciousness of his own guilt for the armed robbery.[3] See

[3] We note that Anderson's statements constituted admissions of a party opponent under OCGA § 24-8-801 (d) (2) (A) and thus were not inadmissible hearsay. See *Bostic v. State*, 294 Ga. 845, 848 (2) (757 SE2d 59) (2014) (defendant's

8

*Bostic*, 294 Ga. at 848 (2) ("[A]ny statement or conduct of a person, indicating a consciousness of guilt, where such person is, at the time or thereafter, charged with or suspected of crime, is admissible against him upon his trial for committing it.") (citation and punctuation omitted). Anderson's statements also were relevant and admissible to corroborate Hick's testimony that he did not participate in the robbery and that Anderson had told him not to give Anderson's name to the police. See *United States v. Mena*, 564 Fed. Appx. 995, 998 (11th Cir. 2014) (evidence was relevant to corroborate testimony of witness whose credibility the defendant had attacked).[4] "This is true even if [the statements] incidentally placed [Anderson's] character into evidence." *Bostic*, 294 Ga. at 848 (2). See *Lewis v. State*, 293 Ga. 110, 114 (2) (a) (744 SE2d 21) (2013).

Moreover, Anderson has not demonstrated that the probative value of the recorded telephone calls was substantially outweighed by the danger of unfair prejudice under OCGA § 24-4-403. As we have pointed out, "[t]he primary function

statements made to fellow inmate while in jail awaiting trial were properly admitted as admissions of a party opponent).

[4] "Given the similarity between Georgia's new evidence code and the Federal Rules of Evidence it is proper that we give consideration and great weight to constructions placed on the Federal Rules by the federal courts." (Citation and punctuation omitted.) *Williams*, 328 Ga. App. at 879 (1), n.14.

9

of [OCGA § 24-4-403] . . . is to exclude evidence of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect," *Williams*, 328 Ga. App. at 879-880 (1), but that was not the situation here, where the recorded calls were clearly relevant to show Anderson's consciousness of guilt and to corroborate Hicks's testimony. In light of the strong preference for admission of relevant evidence under OCGA § 24-4-401, the trial court did not abuse its discretion in striking the balance in favor of admitting the recorded calls into evidence. See *Mena*, 564 Fed. Appx. at 998; *Bostic*, 294 Ga. at 848 (2); *Lewis*, 293 Ga. at 114 (2) (a).

2. Anderson next contends that the trial court erred in sentencing him as a recidivist under OCGA § 17-10-7 (a) and (c). Again, we disagree.

> The recidivist statute imposes maximum sentences for any person convicted of a felony who was previously convicted under the laws of any other state or of the United States of a crime which if committed within this state would be a felony. See OCGA § 17-10-7 (a). In turn, if the person has three such prior felony convictions, upon a fourth felony conviction the person must serve the sentence without the possibility of parole. See OCGA § 17-10-7 (c). The burden is on the [S]tate to produce competent evidence of a prior conviction for purposes of sentencing. The State bears the burden of showing that the foreign convictions were for conduct which would be considered felonious under the laws of this state. And failure to properly prove the prior convictions requires remand and resentencing.

(Citations and punctuation omitted.) *Davis v. State*, 319 Ga. App. 501, 504 (2) (736 SE2d 160) (2012). See OCGA § 17-10-7 (a),[5] (c).[6]

After the jury found Anderson guilty of armed robbery, the State introduced certified copies of three prior convictions for purposes of recidivist sentencing under OCGA § 17-10-7 (a) and (c). One of the prior convictions was for armed robbery in Michigan. The certified copies of the Michigan charging document and judgment of sentence reflect that Anderson pled nolo contendere to armed robbery in Michigan

---

[5] OCGA § 17-10-7 (a) provides: "Except as otherwise provided in subsection (b) or (b.1) of this Code section, any person who, after having been convicted of a felony offense in this state or having been convicted under the laws of any other state or of the United States of a crime which if committed within this state would be a felony and sentenced to confinement in a penal institution, commits a felony punishable by confinement in a penal institution shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted, provided that, unless otherwise provided by law, the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense."

[6] OCGA § 17-10-7 (c) provides: "Except as otherwise provided in subsection (b) or (b.1) of this Code section and subsection (b) of Code Section 42-9-45, any person who, after having been convicted under the laws of this state for three felonies or having been convicted under the laws of any other state or of the United States of three crimes which if committed within this state would be felonies, commits a felony within this state shall, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served."

11

Recorder's Court for stealing a car from a victim at gunpoint on August 19, 1991, and that Anderson was given a sentence committing him to the Michigan Department of Corrections for a term of six to fifteen years. His sentence included a court recommendation that he be housed in a facility with youthful offenders.[7]

On appeal, Anderson contends that the State failed to prove that his prior Michigan conviction would have constituted a felony in Georgia, given that he was under 17 years old and thus was a juvenile offender when the Michigan offense occurred.[8] Consequently, Anderson maintains that his Michigan conviction could not

---

[7]Anderson also pled nolo contendere to kidnapping and possession of a felony firearm in the Michigan case, but his convictions and sentences on these additional counts were later vacated during resentencing. In contrast, Anderson's original sentence of six to fifteen years for armed robbery remained in place as part of the resentencing, and Anderson was again sentenced to the custody of the Michigan Department of Corrections, with the same court recommendation that he be incarcerated in a facility for youthful offenders.

[8] There is some discrepancy in the record as to whether Anderson was in fact under 17 years old when he committed the Michigan armed robbery. But assuming arguendo that Anderson was younger than 17 when he committed the Michigan offense, we conclude that the offense still could have been prosecuted as a felony if it had been committed in Georgia, as explained below.

be used by the trial court as a prior felony conviction for the purpose of sentencing him as a recidivist under OCGA § 17-10-7 (a) and (c).[9]

As an initial matter, we note that Anderson did not object to the admission of his Michigan conviction at the sentencing hearing. In any event, even if Anderson did not waive his objection to the Michigan conviction by failing to object in the trial court,[10] the trial court committed no error in using the conviction as a predicate offense for recidivist punishment.

As a general rule, prior offenses committed in other states by a defendant when he was a juvenile cannot be used as predicate convictions for recidivist punishment because in Georgia, "[a] juvenile is not convicted of felonies, but adjudicated delinquent, based on delinquent acts," and "[t]he plain terms of [the recidivist statute]

---

[9] Anderson does not dispute that a nolo contendere plea can constitute a prior conviction for purposes of recidivist sentencing. See *Phillips v. State*, 329 Ga. App. 279, 282 (2) (a) (764 SE2d 879) (2014).

[10] See, e.g., *Robbins v. State*, 326 Ga. App. 812, 813 (757 SE2d 452) (2014) (defendant's argument that first offender guilty plea did not constitute a "conviction" for purposes of recidivist sentencing could be raised for the first time on appeal because "a challenge to . . . [a] void sentence cannot be waived by the failure to object") (citations and punctuation omitted). Compare *von Thomas v. State*, 293 Ga. 569, 573-574 (2) (748 SE2d 446) (2013) (distinguishing between different types of challenges to prior convictions used for recidivist sentencing that can and cannot be waived by the failure to object in the trial court, and holding that a challenge to the validity or existence of a prior conviction can be waived).

13

require that the defendant be convicted of prior crimes which if committed in this state would be felonies." *Miller v. State*, 231 Ga. App. 869, 871 (2) (501 SE2d 42) (1998). However, if the defendant, despite his juvenile status, could have been convicted of a felony if the prior offense had been committed in Georgia, then the prior offense can be used as a predicate conviction for recidivist punishment under OCGA § 17-10-7 (a) and (c). See *Moore v. State*, 276 Ga. App. 55, 56 (622 SE2d 417) (2005). That is the situation here.

When Anderson committed the Michigan armed robbery in August 1991, juvenile courts in Georgia had jurisdiction over juvenile matters involving children under 17 years old. See OCGA §§ 15-11-2 (2) (A); 15-11-5 (a) (1) (1991). But the Georgia statute that addressed the jurisdiction of juvenile courts also gave superior courts concurrent jurisdiction over certain offenses committed by juveniles:

> *Concurrent criminal jurisdiction.* The [juvenile] court shall have concurrent jurisdiction with the superior court over a child who is alleged to have committed a delinquent act which would be considered a crime if tried in a superior court and for which the child may be punished by loss of life or confinement for life in a penal institution.

(Emphasis in original.) OCGA § 15-11-5 (b) (1991). Juvenile courts and superior courts thus had concurrent jurisdiction over a child under 17 years old who committed a crime punishable by loss of life or confinement for life. See id.

As previously noted, the Michigan charging document alleged that Anderson took a car from the presence of the victim by use of a handgun. These same allegations would have constituted the crime of armed robbery under Georgia law. See OCGA § 16-8-41 (b) (1991) ("A person commits the offense of armed robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by use of an offensive weapon[] . . . ."). Furthermore, the potential punishment for armed robbery in Georgia included imprisonment for life. See OCGA § 16-8-41 (b) (1991). Thus, if Anderson had committed the same offense in Georgia as a juvenile in 1991, a superior court would have had concurrent jurisdiction over the matter and Anderson could have been convicted of the felony offense of armed robbery. See OCGA § 15-11-5 (b) (1991).

For this reason, the State met its burden of proving that Anderson's Michigan conviction was for conduct that would have been considered a felony under Georgia law. The trial court therefore committed no error in using the Michigan conviction as a predicate offense for recidivist punishment under OCGA § 17-10-7 (a) and (c) and

15

sentencing Anderson accordingly. See *Moore*, 276 Ga. App. at 56 (prior armed robbery by juvenile could be used for recidivist sentencing). Compare *Smith v. State*, 266 Ga. App. 111, 112-113 (596 SE2d 230) (2004) (prior delinquent act of burglary by juvenile could not be used for recidivist punishment because superior court did not have concurrent jurisdiction over that offense).

3. Lastly, Anderson contends that his trial counsel rendered ineffective assistance in several respects. To establish a claim of ineffective assistant of counsel under the test established in *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984), Anderson

> must show both that counsel's performance was deficient, and the deficient performance was prejudicial to his defense. Moreover, to establish deficient performance, [Anderson] . . . must overcome the strong presumption that his counsel's conduct fell within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way, considering all circumstances and in the light of prevailing professional norms. Further, failure to satisfy either prong of the *Strickland* test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong.

(Citations and punctuation omitted.) *Brannon v. State*, 298 Ga. 601, 611 (7) (783 SE2d 642) (2016). In addressing a claim of ineffective assistance on appeal, we

review the trial court's legal conclusions de novo and its factual findings under the clearly erroneous standard. *Ellison v. State*, 296 Ga. App. 752, 755 (2) (675 SE2d 613) (2009).

(a) Anderson argues that his trial counsel was ineffective for failing to object to the trial court's use of his prior Michigan conviction as a predicate offense for recidivist punishment. But, as explained supra in Division 2, Anderson's Michigan conviction could be used for purposes of recidivist sentencing. Anderson's trial counsel was not ineffective for failing to raise a meritless objection. See *Copeland v. State*, 281 Ga. App. 11, 14 (3) (b) (635 SE2d 283) (2006).

(b) Anderson also argues that his trial counsel was ineffective for failing to subpoena any eyewitnesses to the Waffle House robbery and have them testify as defense witnesses. However, at the hearing on Anderson's motion for new trial, his trial counsel testified that as part of his investigation, he had reviewed the witness statements taken by the police at the Waffle House and did not believe that any of the witnesses would testify favorably for the defense.

"It is well established that the decision as to which defense witnesses to call is a matter of trial strategy and tactics, and that tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones

17

no competent attorney would have made under similar circumstances." (Citations and punctuation omitted.) *Watkins v. State*, 285 Ga. 355, 358 (2) (676 SE2d 196) (2009). Based on trial counsel's testimony at the new trial hearing, Anderson has failed to show that his counsel's decision not to subpoena any eyewitnesses to testify for the defense at trial was so unreasonable that no competent attorney would have made the same decision. See id.

(c) Anderson contends that his trial counsel was ineffective for asking a question on cross-examination that elicited testimony from the lead detective that impermissibly bolstered Hick's credibility before the jury. He further contends that his trial counsel was ineffective for failing to object or move to strike the bolstering testimony once elicited from the detective.

During trial, Anderson's trial counsel asked the lead detective several questions on cross-examination aimed at undermining Hick's credibility before the jury. Among other things, trial counsel inquired about Hick's second interview with the detective in which Hicks for the first time admitted that Plummer's car had not been stolen and that Anderson was present at the robbery:

COUNSEL: . . . [H]ow long did that second set of interviews [with Hicks] last?

DETECTIVE: Oh, less than an hour, most likely.

COUNSEL: During the course of that hour, did he tell you that he'd do anything or say anything in order to stay out of prison?

DETECTIVE: I don't recall that, no.

COUNSEL: Okay.

DETECTIVE: *I do recall him making statements that he didn't - - did not want to go to jail, did not want to go to prison for something he didn't do.*

(Emphasis supplied.)

Contrary to Anderson's argument, the detective's last answer did not amount to impermissible bolstering. "It is erroneous for a witness, even an expert, to bolster the credibility of another witness by expressing an opinion that the witness is telling the truth. What is forbidden is opinion testimony that directly addresses the credibility of the victim, i.e., 'I believe the victim; I think the victim is telling the truth.'" (Citations and punctuation omitted.) *Wright v. State*, 327 Ga. App. 658, 661 (2) (a) (760 SE2d 661) (2014). In his last answer, however, the detective did not express an opinion that Hicks was telling the truth, and thus did not directly address Hick's

credibility. Because the detective's testimony did not constitute impermissible bolstering, Anderson has failed to show that his trial counsel was deficient in his questioning of the detective or in his failure to object or move to strike the detective's testimony. See id. at 661-662 (2) (a).

Furthermore, trial counsel testified at the new trial hearing that he had not believed that any objection to the detective's response was necessary, given that counsel had already highlighted to the jury that Hicks had lied to the police. The scope of cross-examination and the decision whether to raise certain objections is a matter of trial tactics and strategy. See *Brunson v. State*, 322 Ga. App. 302, 303 (2) (744 SE2d 801) (2013); *Martinez v. State*, 303 Ga. App. 166, 174 (4) (b) (692 SE2d 766) (2010). Anderson has failed to show that his trial counsel's strategy on cross-examination of the detective was so unreasonable that it constituted ineffective assistance.

*Judgment affirmed. Boggs and Rickman, JJ., concur*.